[S. F. No. 348.   Department Two.—January 26, 1897.]

# CHARLES CARPY, Respondent, v. JAMES DOW-DELL et al., Appellants.

CHATTEL MORTGAGES — ASSIGNMENT AFTER MATURITY OF NOTES — FORE-CLOSURE—DEFENSE AGAINST ASSIGNEE.—Where notes secured by chattel mortgages are assigned, after they become overdue, to one who knows the fact upon which a defense rests against the chattel mortgagee, the assignee stands in the shoes of such mortgagee, and, upon foreclosure of the chattel mortgages, is subject to the same defense which might have been made upon foreclosure by the mortgagee.

ID.—CHATTEL MORTGAGE OF WINE TO BANK—SALE WITH APPROVAL OF CASHIER—AGREED PAYMENTS TO BANK BY RESPONSIBLE PURCHASER—STOPPAGE OF SALE BY ASSIGNEE OF BANK—ESTOPPEL.—Where wine stored in cellars was mortgaged by the owner to a bank, and, with the approval and consent of the cashier of the bank, according to the usual custom of the bank, a sale of the wine was negotiated to a responsible purchaser, who agreed to pay the price of the wine to the bank on account of the mortgagor, the bank is estopped to maintain foreclosure proceedings to prevent the delivery of the wine to the purchaser pursuant to the contract which it had consented to and induced the parties to make; and its assignee taking after maturity of the notes, with knowledge of the facts, is subject to the same estoppel, and cannot legally, by means of a receiver and injunction in a foreclosure suit, stop the removal and delivery of the wine to the purchaser.

ID.—AUTHORITY OF CASHIER—CUSTOM OF BANK—KNOWLEDGE AND CONSENT OF DIRECTORS.—Where the cashier of a bank, to the knowledge and with the assent and tacit approval of the directors of the bank, had for many years permitted wine mortgaged to the bank by the same and other persons to be sold to responsible third parties, under contracts similar to the one in controversy, the bank cannot repudiate the act of the cashier in authorizing the contract in controversy, but his act is the act of the bank.

ID.—EVIDENCE OF CASHIER'S AUTHORITY—PAROL AND CIRCUMSTANTIAL PROOF—IMPLICATION—COURSE OF BUSINESS—ACQUIESCENCE OF BANK—DUTY OF DIRECTORS.—A banking corporation may be represented by its cashier, where its charter does not otherwise provide, in transactions outside of his ordinary duties, without his authority to do so being in writing or appearing upon the records of the proceedings of the directors; but his authority may be by parol, and collected from circumstances, or inferred or implied from the general manner and settled course of the business which he has been allowed to conduct without interference, and from the conduct or acquiescence of the corporation, as represented by the board of directors, whose duty it is to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers.

ID.—PRINCIPLE OF EQUITABLE ESTOPPEL.—The vital principle of equitable estoppel is, that he who by his language or conduct leads another to do

what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted; and when a person tacitly encourages an act to be done, he cannot afterward exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the party to change his position, so that he will be pecuniarily prejudiced by the assertion of an adversary claim.

ID.—CONSIDERATION FOR ESTOPPEL.—An equitable estoppel does not rest upon a consideration moving to the party estopped; but where a bank is to receive all the money due to it by the terms of a chattel mortgage from the purchaser of the mortgaged property, instead of relying upon a forced sale, there is a sufficient consideration moving to it to support its agreement that the purchase shall be made, and to estop it from repudiating the purchase.

ID.—PLEADING—FACTS CONSTITUTING ESTOPPEL—WAIVER OF DEFECT.—Assuming that an estoppel in pais must be pleaded, it is sufficent if the facts upon which the estoppel rests be pleaded so that the opposite party may know its nature; and if there be any defect in the pleading of the facts, it is waived, where no objection is taken at the trial to evidence of all the requisite facts to constitute the estoppel on the score of defective pleading.

APPEAL from an order of the Superior Court of Napa County denying a new trial. E. D. HAM, Judge.

.The facts are stated in the opinion of the court.

*Rodgers & Paterson*, and *F. E. Johnston*, for Appellants.

The cashier can release a debt secured by mortgage. (*Ryan* v. *Dunlap*, 17 Ill. 40; 63 Am. Dec. 334.) Where a corporation allows its officers to act in a certain way, it is estopped from denying the validity of the officers' acts. (Morse on Banks and Banking, 171; *Martin* v. *Webb*, 110 U. S. 7; *Hoyt* v. *Thompson*, 5 N. Y. 320–33; *Parker* v. *Donnally*, 4 W. Va. 648; *Dougherty* v. *Hunter*, 54 Pa. St. 380; *Neiffer* v. *Bank*, 1 Head, 162; *Caldwell* v. *National Mohawk Valley Bank*, 64 Barb. 333; *Texas etc. Ry. Co.* v. *Robards*, 60 Tex. 545; 48 Am. Rep. 268; *Carey* v. *Petroleum Co.*, 39 Cal. 696; *San Joaquin Valley Bank* v. *Bours*, 65 Cal. 249, 250.) When the bank consented to the sale of the wine to Dowdell & Son, without saying anything about the continuance of the lien, the law implied a consent on the part of the bank to release the wine from the lien of the mortgage. (Civ. Code, sec.

1541; Jones on Chattel Mortgages, 456, 660, 661; *Stafford* v. *Whitcomb*, 8 Allen, 518; *Patrick* v. *Meserve*, 18 N. H. 300; *Brandt* v. *Daniels*, 45 Ill. 453; 30 Am. & Eng. Ency. of Law, 742–45; *Hicks* v. *Ross*, 71 Tex. 358; *Conkling* v. *Shelley*, 28 N. Y. 360; 84 Am. Dec. 348.)   The bank is now estopped from claiming a lien upon the property. (*Dickerson* v. *Colgrove*, 100 U. S. 578; *Daniels* v. *Tearney*, 102 U. S. 420; *Markham* v. *O'Connor*, 52 Ga. 183; 21 Am. Rep. 249; *Escolle* v. *Franks*, 67 Cal. 139; *Storch* v. *McCain*, 85 Cal. 304; *Van Syckel* v. *O'Hearn*, 50 N. J. Eq. 173; Anderson's Law Dictionary, 415; *Pellier* v. *Gillespie*, 67 Cal. 582; *Thomson* v. *Bettens*, 94 Cal. 82; *Burr* v. *Beers*, 24 N. Y. 179; 80 Am. Dec. 327; *Barker* v. *Bucklin*, 2 Denio, 45; 43 Am. Dec. 726; *Delaware etc. Co.* v. *Banks*, 4 Denio, 97.)   The lien was waived.   (*Chandler* v. *Belden*, 18 Johns. 157; 9 Am. Dec. 193; *Hutchins* v. *Olcutt*, 4 Vt. 549; 24 Am. Dec. 634; *Stoddard etc. Co.* v. *Huntley*, 8 N. H. 441; 31 Am. Dec. 198; Jones on Liens, 1031; *Robinson* v. *Springfield Iron Co.*, 39 Hun, 634; *Prime* v. *Koehler*, 77 N. Y. 91; *Mallory* v. *Gillett*, 21 N. Y. 412; *Topia* v. *Demartini*, 77 Cal. 388; 11 Am. St. Rep. 288; *Guidery* v. *Green*, 95 Cal. 634.)

*Daniel Titus*, for Respondent.

Silence cannot be pleaded as an estoppel by one acquainted with his own rights, or who has the means of ascertaining them.  (*Ferris* v. *Coover*, 10 Cal. 591; *Watson* v. *Sutro*, 86 Cal. 500; *Martin* v. *Zellerbach*, 38 Cal. 300; 99 Am. Dec. 365; *Barnhart* v. *Fulkerth*, 93 Cal. 497; *Burritt* v. *Dickson*, 8 Cal. 113.)  The cashier of a bank has no power or authority to release a debtor from his obligation to pay his indebtedness, or to release or discharge his security until the debt is paid.  (Boone on the Law of Banking, 104, 116; *Sandy River Bank* v. *Merchants' etc. Bank*, 1 Biss. 146; *Hodge* v. *First Nat. Bank*, 22 Gratt. 51; *Ecker* v. *First Nat. Bank*, 59 Md. 291; *Cocheco Nat. Bank* v. *Haskell*, 51 N. H. 116; 12 Am. Rep. 68; *Ryan* v. *Dunlap*, 17 Ill. 40; 63 Am. Dec. 334; *Gallery* v. *Albion Nat. Bank*, 41 Mich. 169; 32 Am. Rep. 149;

*Merchants' Bank* v. *Rudolf,* 5 Neb. 527; *Daviess Co. Sav. Assn.* v. *Sailor,* 63 Mo. 24; *Wickersham* v. *Crittenden,* 93 Cal. 18; 1 Morawetz on Private Corporations, sec. 540; *United States* v. *City Bank,* 21 How. 356; *Bank of United States* v. *Dunn,* 6 Pet. 51.) Usages and customs must have the essential elements of certainty, notoriety, and continuity to bring themselves home to the knowledge of those who are concerned in the trade or business to which they may pertain. (*Savage* v. *Pelton,* 1 Colo. App. 148; *Rapp* v. *Palmer,* 3 Watts, 178; *Collings* v. *Hope,* 3 Wash. (U. S.) 150; *Stultz* v. *Dickey,* 5 Binn. 287; 6 Am. Dec. 411; *Parrott* v. *Thacher,* 9 Pick. 426; *United States* v. *MacDaniel,* 7 Pet. 1; *Winthrop* v. *Union Ins. Co.,* 2 Wash. C. C. 7; *Cope* v. *Dodd,* 13 Pa. St. 33.) A usage cannot be proved by isolated instances. (*Dean* v. *Swoop,* 2 Binn. 72; *Ambler* v. *Phillips,* 132 Pa. St. 167; *Flatt* v. *Osborne,* 33 Minn. 98; *Janney* v. *Boyd,* 30 Minn. 319; *Taylor* v. *Mueller,* 30 Minn. 343; 44 Am. Rep. 199; 27 Am. & Eng. Ency. of Law, 736.) To release a chattel mortgage there must be an agreement for the release supported by a new consideration, or there must be a written release with or without a new consideration. (Civ. Code, secs. 1541, 1661, 1698; 20 Am. & Eng. Ency. of Law, 744; *Kidder* v. *Kidder,* 33 Pa. St. 268; *Benjamin* v. *McConnell,* 9 Ill. 536; 46 Am. Dec. 474; *Leviston* v. *Junction R. R. Co.,* 7 Ind. 597; *Thomason* v. *Dill,* 30 Ala. 444; *Nesbitt* v. *McGehee,* 26 Ala. 748; *Snyder* v. *Kirtley,* 35 Mo. 423; *Jones* v. *Perkins,* 29 Miss. 139; 64 Am. Dec. 136; *Bender* v. *Been,* 78 Iowa, 283; *Purdy* v. *Rome etc. R. Co.,* 125 N. Y. 209; 21 Am. St. Rep. 736.) A mortgagee of personal property does not release the property from a lien of his mortgage by his mere silence on being informed that a part of the property has been disposed of by the mortgagor and delivered to another creditor. (*Patterson* v. *Taylor,* 15 Fla. 336; *Thompson* v. *Blanchard,* 4 N. Y. 303; *Gregg* v. *Wells,* 10 Ad. & E. 90; *Demeyer* v. *Souzer,* 6 Wend. 436; *Dezell* v. *Odell,* 3 Hill, 215; 38 Am. Dec. 628; *Pickard* v. *Sears,* 6 Ad. & E. 469.)

McFARLAND, J.—Judgment went for plaintiff in the court below, and defendants appeal from an order denying their motion for a new trial.

The action is to foreclose two certain chattel mortgages executed by the appellants, Dowdell & Son, to the Bank of St. Helena upon certain wine, to secure two promissory notes given by said appellants to said bank, which were assigned to respondent immediately before the commencement of this action.   The notes were overdue when assigned to respondent, and he then knew the facts upon which the defense in this case rests; and it is not seriously contended that he does not stand in the shoes of the bank.   If the bank could not have maintained this action, then it cannot be maintained by respondent.

The wine was stored in cellars in the town of St. Helena, in Napa county.   On April 3, 1895, appellants had negotiations at St. Helena with George F. Chevalier, a wine merchant of San Francisco (doing business under the name of F. Chevalier & Co.), for the sale to him of a large part of said wine.   He knew that the wine was mortgaged to the bank, and during the day had a conversation at the bank, with its cashier, about the contemplated purchase.   About 7 or 8 o'clock in the evening, in pursuance of a previous appointment, the Dowdells, Chevalier, and the said cashier met at the said bank for the purpose of completing the said purchase of the wine by Chevalier.   The cashier was requested to draw up a written contract, which he did, and it was duly signed and executed by the Dowdells and Chevalier.   By this instrument the former sold to the latter, and the latter purchased, three hundred and sixty-eight thousand gallons of the wine, at eleven cents per gallon.   Delivery of the wine was to commence immediately, and to be continued at the rate of not less than fifty thousand gallons per month.   Five thousand dollars was to be paid on May 1st, and thereafter there were to be monthly payments for all wine delivered. When the cashier had nearly completed the writing of

the instrument, he said: "I neglected the most important part, as far as I am concerned. This is where I get in, as the payments shall be made to the bank of St. Helena." Thereupon he inserted the following clause: "All payments on said wine to be made to the Bank of St. Helena for our account, the cashier of said bank to receipt for the same." The preponderance of the evidence shows that Chevalier offered to make to the bank, at that time, the first payment provided by the contract, and that the cashier said it was not necessary; and it fully appears that Chevalier was perfectly able, financially, to make all the payments provided by the contract, and was so understood to be by the cashier, who so testified. Chevalier & Co. have always been willing, ready, and able to take the wine, and pay for it according to the contract. Immediately after the execution of the contract Dowdell & Son commenced to deliver the wine to Chevalier & Co., and on April 13th "had delivered on the cars at the station for shipment six carloads thereof, which said purchaser was about to remove from said county of Napa under and by virtue of said agreement of sale." But on April 11th the bank had assigned the notes and mortgages to the respondent Carpy, who on the 13th commenced this action, and by means of a receiver and an injunction stopped the removal of said cars and the delivery of any more of the wine by appellants to said Chevalier & Co.

Appellants contend that under the circumstances above stated the bank could not legally, by a suit to foreclose, prevent the delivery of the wine to Chevalier & Co. pursuant to said contract, which it had consented to and induced the parties to make. The contention of respondent is, briefly: 1. That what the cashier did does not bind the bank; and 2. That what he did was of no legal consequence whatever, even if his acts in the premises be considered as the acts of the bank. As to the first of said positions, we think that it is clearly untenable. It is in proof without contradiction that, to the knowledge and with the consent and tacit approval

of the directors of the bank, this same cashier had for many years been having with others and with appellants the same kind of transactions as the one here under consideration; that is, the bank had been in the habit of taking mortgages from various persons on wine, and the cashier, with the knowledge and consent of the directors as aforesaid, had permitted wine thus mortgaged to be sold to third parties under contracts similar to the one here involved. This was proven at the trial by the president of the bank and four of its other directors, by the said cashier himself, by several witnesses who had similar transactions with the bank, and by the appellant, Arthur B. C. Dowdell, who prior to this contract had several similar transactions with said cashier. We have said that this was proven without contradiction, by which we mean that the facts above stated were so proven, although some of the witnesses testified that there had not been any resolution upon the subject passed by the board of directors in corporate body assembled, and that they did not understand that the cashier had been given any power to release a mortgage. Under these circumstances, it is not necessary to determine what powers the cashier had merely by virtue of his position as cashier; for when a corporation, by a long course of acquiescence, holds out an officer or agent as having authority to do certain things, it cannot after he has acted repudiate his acts. This principle is decided by many authorities, but it is sufficient here to cite Morse on Banks and Banking, 3d ed., sec. 171 *g*, and cases there cited, and *Martin* v. *Webb*, 110 U. S. 7; *Merchants' Bank* v. *State Bank*, 10 Wall. 604; *Bank* v. *McCarthy*, 7 Mo. App. 318; *Carey* v. *Petroleum Co.*, 33 Cal. 694. In Morse on Banks and Banking, 3d ed., section 171 *g*, it is said—and the cases cited fully warrant the text—as follows: " Evidence of powers habitually exercised by a cashier with the knowledge and acquiescence of the bank, defines his powers as to the public, if they are such as the directors have authority to confer on him. A bank, for several years, permitted its cashier to can-

cel trust deeds given to secure money loaned, and was thereby estopped to deny his power to cancel." It is also there declared that, where the conduct of a cashier has been open and long continued, "it must have come to the knowledge of any ordinarily vigilant directory." (Citing *Bank* v. *McCarthy, supra,* which fully sustains the text.) *Martin* v. *Webb, supra,* is a case in which the principle under discussion was directly involved and clearly stated. Mr. Justice Harlan, in delivering the opinion of the court, said, among other things, as follows: "While these propositions are recognized in the adjudged cases as sound, it is clear that a banking corporation may be represented by its cashier—at least where its charter does not otherwise provide—in transactions outside of his ordinary duties, without his authority to do so being in writing, or appearing upon the record of the proceedings of the directors. His authority may be by parol and collected from circumstances. It may be inferred from the general manner in which, for a period sufficiently long to establish a settled course of business, he has been allowed, without interference, to conduct the affairs of the bank. It may be implied from the conduct or acquiescence of the corporation, as represented by the board of directors. When, during a series of years, or in numerous business transactions, he has been permitted, without objection, in his official capacity, to pursue a particular course of conduct, it may be presumed, as between the bank and those who, in good faith, deal with it upon the basis of his authority to represent the corporation, that he has acted in conformity with instructions received from those who have the right to control its operations. Directors cannot, in justice to those who deal with the bank, shut their eyes to what is going on around them. It is their duty to use ordinary diligence in ascertaining the condition of its business, and to exercise reasonable control and supervision of its officers. They have something more to do than, from time to time, to elect the officers of the bank and to make declarations of divi-

dends. That which they ought, by proper diligence, to have known as to the general course of business in the bank, they may be presumed to have known in any contest between the corporation and those who are justified by the circumstances in dealing with its officers upon the basis of that course of business." It is clear, therefore, that the acts of the cashier in the premises were the acts of the bank.

But it is contended by respondent (substantially) that the conduct of the cashier, even if considered as binding the bank, amounted in law to absolutely nothing; that notwithstanding this conduct the bank, although having consented to and encouraged the sale, and being in effect a party to it, could interfere with and put an end to it at any time and without any reason, and merely at its own whim. This would be violative of the principles of fair dealing, and unwarranted, we think, by the law. We do not think it necessary to determine here that the consent of a mortgagee of chattels to the sale of the mortgaged property and its removal from the county amounts to an absolute release of the entire mortgage, and as against all parties who may choose afterward to deal with it—although there are many authorities to that effect, some of which have hereinbefore been noted. We think, however, that upon sound principles the bank was estopped, at least, from interfering with the sale by appellants to Chevalier while its terms were being complied with, and from the attempt to disregard and practically annul such sale by the proceedings in foreclosure. There is no pretense that anything whatever took place after the sale and before the bringing of the action to foreclose that changed the position of any of the parties, or in any manner whatever affected injuriously the rights of the bank. It is admitted that Chevalier was perfectly able to comply with the terms of the sale, and was willing and ready to do so; it is apparent that the money to be paid by him for the amount of wine purchased would have been more than sufficient to satisfy the demands of the bank

against appellants; a large part of the wine had been
delivered, and there is no justifiable reason apparent
why the bank should have then sought to repudiate its
acts by which it consented to and induced the sale.   Of
course, Chevalier would not have purchased without the
consent of the bank, and the appellants could have
made no effectual effort to sell without such consent.
That consent is clearly established; for not only does it
appear from the circumstances under which the sale
was made, but the cashier testified: "I was satisfied
with the responsibility of Chevalier & Co., of course, *or
I would not have consented to the sale,* and if the notes and
mortgages had not been assigned we would not have ob-
jected to Chevalier & Co. taking the wine, so long as they
continued to make payments to the bank as required by
the contract."   The bank having thus consented to the
sale, and shaped the same to suit itself, and induced the
parties to enter into the transaction, and encouraged
the appellants to make a contract by which they incurred
great pecuniary responsibilities, and to forego other at-
tempts to dispose of the wine, and to go to the expense
of delivering a large part of it—upon what principle of
fair dealing or legal right can it now, without any appar-
ent reason or worthy motive, abandon the parties in the
positions in which it induced them to take?   We think
that the bank is clearly estopped to deny the validity of
the sale and to defeat it by means of the action to fore-
close.   The principle of equitable estoppel is aptly and
concisely stated by the supreme court of the United
States in the opinion of Mr. Justice Clifford in *Swain* v.
*Seamens,* 9 Wall. 274, in language that has since been
frequently quoted and approved, as follows: "Where a
person tacitly encourages an act to be done he cannot
afterward exercise his legal right in opposition to such
consent, if his conduct or acts of encouragement induced
the party to change his position, so that he will be
pecuniarily prejudiced by the assertion of such adversary
claim"; and the case at bar is not only within that prin-
ciple, but is a much stronger case than one where a

party only " tacitly encourages" an act to be done. In *Dickerson* v. *Colgrove,* 100 U. S. 580, the United States supreme court states the principle as follows: " The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both." And, in the opinion in that case, many cases are cited and approved, in some of which the principle was applied to the extent of *destroying a chattel mortgage.* (See, also, *Van Syckel* v. *O'Hearn,* 50 N. J. Eq. 175; *Daniels* v. *Tearney,* 102 U. S. 420; *Faxton* v. *Faxon,* 28 Mich. 159, and cases there cited.) In California the principle has been frequently so declared as to embrace the case at bar. (*Scott* v. *Jackson,* 89 Cal. 262; *Dolbeer* v. *Livingston,* 100 Cal. 621; *Hostler* v. *Hays,* 3 Cal. 303; *Mitchell* v. *Reed,* 9 Cal. 204; 70 Am. Dec. 647.) It is contended that there was no consideration for the said acts of the bank; but, in the first place, there was a consideration, for the bank was to receive all the money due it from appellants, instead of relying on a forced sale of the wine; and, in the second place, the principle of equitable estoppel does not rest upon a consideration moving to the party estopped. (*Van Syckel* v. *O'Hearn, supra,* and cases there cited.) Our conclusion is that the bank and its assignee were, under the facts above stated, estopped from maintaining this action.

Respondent makes some contention, in a part of his brief which seems to be supplementary, that estoppel cannot be relied on by appellants because it was not pleaded in the answer. There is some conflict of authorities as to whether the rule requiring estoppels to be pleaded is not confined to technical estoppels by deed or record. (*Hostler* v. *Hays, supra; Caldwell* v. *Auger,* 4 Minn. 217; 77 Am. Dec. 515, and notes; *Clarke* v. *Huber,* 25 Cal. 594; *Davis* v. *Davis,* 26 Cal. 23; 85 Am.

Dec. 157.) But, assuming that the rule applies to equitable estoppels *in pais,* it is sufficient if " the matter"— the facts—upon which the estoppel rests be pleaded, so that the opposite party may know its nature. The reason of the rule is given by the court in *Davis* v. *Davis, supra,* where it is said that " it is but just, and is in accordance with the rules of pleading in equity cases, that the party relying upon an equitable estoppel *in pais* should inform the adverse party of the nature of the cause of action or defense which he will be obliged to meet." This was done in the answer in the case at bar, in which the facts above stated are fully set forth. Moreover, there was no objection at the trial to evidence of the facts on the score of defective pleading; and the rule is well established that such a course is a waiver of a defect in pleading.

We have followed the course of the arguments of counsel, who have discussed the real and ultimate merits of the case without particular reference to the form in which the questions involved arise. With respect to the findings, it is sufficient to say that the following part of finding VII is not supported by the evidence, viz: " Said agreement . . . . was not approved by said corporation, and said corporation did not agree to its terms, and did not consent that the defendants might deliver said wine to said Chevalier & Co., or that said wine might be removed from the county of Napa, nor was the consent or permission of said corporation to the making of said sale asked or given"; and that there is not sufficient evidence to support the findings in finding III, that " a removal of said mortgaged property from the county of Napa would have resulted in damage and injury to the plaintiff," and that plaintiff " would have suffered irreparable injury therefrom" had it not been for the appointment of a receiver. It is unnecessary to discuss the other findings. There are quite a number of exceptions to the rulings of the court as to the admissibility of the evidence; but, under the views above expressed, it is not

necessary to discuss said exceptions. It can be sufficiently gathered from this opinion what evidence should have been admitted or excluded.

. The order appealed from is reversed, and a new trial ordered.

HENSHAW, J., and TEMPLE, J., concurred.

Hearing in Bank denied.