[Civ. No. 1316.   Second Appellate District.—September 18, 1913.]

## H. M. REED et al., Respondents, v. R. McDONALD, Appellant.

SALE—WRITTEN CONTRACT TO SELL HAY—PAROL AGREEMENT FOR DE-
TERMINING WEIGHT.—Where a written contract for the sale of hay, in describing the method for determining the weight of the hay, merely indicates how an approximation of the exact weight may be arrived at, the parties may, without working a variation of the terms of the written contract in any material particular, orally agree to pursue some other method which they deem will secure for them the actual weight of the hay.

ID.—PAROL MODIFICATION OF ORIGINAL CONTRACT—ESTOPPEL OF SELLER.
The seller is estopped to assert that the parol agreement to pursue a method for ascertaining the weight of the hay different from the method provided in the written contract is not binding, after he has allowed the buyer to relinquish to third persons the matter of hauling away and checking the weight of the hay.

ID.—CONTRACT TO SELL—WHETHER EXECUTORY OR PASSES TITLE.—
Where a contract is made for the sale of a stack of baled hay, and the only control over the hay retained by the seller is such as will enable him to check it as it is moved away, the contract is not executory but passes title to the buyer.

ID.—SHORTAGE IN HAY SOLD—BURDEN OF PROOF TO ACCOUNT FOR.—The
duty devolves upon the buyer to protect the hay and to account to the seller for the entire stack, and the burden is upon him, in an action to recover alleged overpayments on account of shortage in the quantity of hay purchased, to show the difference between the amount of hay in the stack and that for which he paid.

APPEAL from a judgment of the Superior Court of Kern County and from an order refusing a new trial. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

Geo. E. Whitaker, for Appellant.

W. S. Allen, and F. E. Borton, for Respondents.

JAMES, J.—This litigation has for its origin a dispute which arose out of a written contract for the sale of a lot of baled hay. The cause of action accrued in the year 1900 and is therefore now of well seasoned age. During the year mentioned the defendant was the owner of a large stack of baled hay located at Bakersfield which plaintiffs were desirous of purchasing. The parties having agreed upon the price of $8.75 per ton, the next question to be settled was as to the amount of hay contained in the stack. This amount was finally estimated to be six hundred and fifty tons. A written agreement was thereupon executed which provided that, based upon such estimated tonnage, the plaintiffs should pay $2,645 on February 20, 1900, and the balance of $3,042.50 on September 1, 1900. It was not agreed that the estimated tonnage should be taken as the basis for a final accounting, but to cover that matter the following clause was included in the written agreement: "The approximate tonnage to be accepted by both parties, until the parties shall move the said hay, at which time the portion of same shall be weighed, and balance of stack counted in bales, and average of same be taken to the satisfaction of both parties. And overplus from above said figures 650 tons shall be paid for by the parties of the second part at aforesaid rate $8.75 per ton, and any shortage of aforesaid figures 650 tons, shall be refunded at same rate." The cash payments hereinbefore referred to were made at about the time specified, but the hay was not all removed from the stack by the plaintiffs, or under their direction, until about January of the year 1901. After the hay had all been removed, plaintiffs claimed that there was a shortage of approximately one hundred tons and demanded a refund therefor under the term of the contract covering

such contingency. The demand was refused and this action followed, which resulted in a judgment in favor of plaintiffs. The trial court found that there was a shortage of ninety-one tons, 856.80 pounds, and gave judgment for that amount at the contract price of $8.75 per ton with interest. Defendant appealed from the judgment and from an order denying his motion for a new trial.

The evidence showed without dispute that when the plaintiffs first began to remove hay from the stack a quantity of it was weighed and these weights were compared with the balers' tag weights which were attached to each bale. It being found that these tag weights corresponded very closely with the actual scale weights then made, plaintiffs and defendant agreed to use the tag weights in ascertaining the total tonnage received by the former. This method of establishing the weight of the hay continued until plaintiffs had removed about three hundred and seven tons. At that time plaintiffs had, through some arrangement with a man named De Groot, agreed to let De Groot have the remainder of the hay, and De Groot had arranged with one Loveland to remove the hay from the stack and make shipment of it. Thereupon one of the plaintiffs called upon defendant and stated, so he testified, that De Groot had acquired ownership of the hay and that he desired Loveland to remove it. This plaintiff testified that defendant then agreed that Loveland might remove the hay and that he (defendant) would accept car weights from Loveland as proof of the quantity removed. Defendant denied that he ever agreed to accept car weights or any weights from Loveland, although it appears that he did accept such weight returns from Loveland for a time. All parties agree that before Loveland had taken away all of the hay defendant did notify him that he would not accept his weights any further. Loveland continued to remove the hay until it had all been disposed of. Loveland did not ship all of the hay which he removed, and therefore did not receive car weights for all of it, but he testified that the total amount which he removed was one hundred and sixty-four tons, four hundred and thirty-nine pounds, and that of this amount he shipped one hundred and forty-one tons, one thousand and six hundred pounds, and sold the remainder at different places in Bakersfield. There was some loose and

damaged hay, the quantity of which was estimated by the parties, and plaintiffs were charged with this in the computation made by the trial court. Respondents have not favored the court with any brief on this appeal and therefore appellant's points must be examined without the aid of counter-argument.

The chief contention of appellant is that the contract for the sale of the hay being in writing and being reasonably clear and explicit as to the method which it was agreed should be pursued in arriving at the tonnage of the hay, such contract could not be altered or varied by an unexecuted parol agreement. The deduction is then made that, even though the finding of the trial court wherein it was determined that defendant had agreed to accept the car weights for the hay, as furnished by Loveland, should not be disturbed because it rested upon a conflicting state of the evidence, still defendant was not bound by the latter agreement because it contemplated the use of a method different from that stipulated for in the written contract. The second principal contention is that in any event the burden of showing a shortage in the quantity of hay sold rested upon plaintiffs and that this burden was not sustained by the proof offered. The clause in the contract referring to the method which the parties agreed might be used in estimating the quantity of hay was never strictly followed. In interpreting it in the light of the evident intention of the parties, it is clear that the desire was to get at as nearly as possible the exact weight of the hay. The stack being a large one, the method of averaging the greater quantity of it was agreed upon as a satisfactory one. However, the parties themselves did not follow this method at any time. When the plaintiffs first began to remove the hay they weighed a quantity of it and then plaintiffs and defendant together decided to take the tag weights that had been attached by the balers, as these weights were found to be approximately correct as verified on the scales. The clause of the contract describing the mode as to how the weight should be ascertained, should be, as before suggested, construed only as indicating how an approximation of the exact weight might be arrived at. If the exact weight had been ascertained by weighing all of the hay upon the scales, undoubtedly neither party could have questioned that method.

Therefore, it would not be proper to hold that an agreement
to pursue some other method which the parties deemed would
secure for them the actual weight of the hay, should be
deemed to work a variation of the terms of the written con-
tract in a material particular. Moreover, assuming that the
finding of the court as to the agreement to accept car weights
properly determines that fact, as must be assumed because
of the contradictory state of the evidence, it appears that
the plaintiffs depended upon this agreement so made with
the defendant and that defendant did not refuse to abide
thereby until a large portion of the remainder of the hay had
been removed under Loveland's direction. One of the plain-
tiffs testified that his reason for securing the assent of de-
fendant to allowing Loveland to turn in the car weights of
the hay was so that he (that plaintiff) might be relieved of
the obligation of checking it and that he relied upon de-
fendant's agreement to accept car weights from Loveland.
Under this state of the case defendant should be held to be
estopped from asserting that the agreement to accept car
weights was not binding after he had allowed plaintiffs to
relinquish into the hands of Loveland the matter of hauling
away and checking the weights of the hay. There is more
merit in the second contention of defendant, that the evidence
was not sufficient to enable the trial court to ascertain the
cause of the alleged shortage or the amount thereof. The
title to the hay in the stack passed to the plaintiffs upon the
making of the contract of purchase. (*Lassing* v. *James,* 107
Cal. 348, [40 Pac. 534].) It was not an executory sale and
the only control over the merchandise retained by the defend-
ant, the vendor, was that control which would enable him to
check the hay as it was moved away from his ground. The
duty of keeping up protecting fences and the wooden guards
about the stack devolved upon plaintiffs. The plaintiffs,
therefore, were obliged to account to defendant for the en-
tire stack of hay; the condition of contract was not such
that they were to pay for whatever hay they might remove
from the stack, but the entire lot of hay belonged to them,
for which they made payment to defendant. There was evi-
dence showing that at different times, through the evident
negligence of Loveland and his men, the fences which inclosed
the hay stack were down, apertures therein were allowed to

22 Cal. App.—45

remain for a day or two at a time, and that some persons did remove hay from the stack. Loveland testified that the fence was open at times so that any one could drive in, and admitted that he had told defendant on one occasion that some of the damaged hay had been taken out or stolen; that the men he had at work hauling the hay had told him that some bales were taken out. The quantity of hay thus removed was neither estimated nor accounted for, and the fact that it may have been damaged hay did not in any way relieve plaintiffs from the obligation to pay therefor according to their contract. The evidence showed very clearly that Loveland was negligent in not properly protecting the stack of hay from the depredations of thieves, and as indicated by his own testimony he showed that it was probable that hay had been stolen and taken away. If there had been any testimony indicating or tending with reasonable certainty to indicate what quantity of hay had been removed and not accounted for, the court would have had a basis upon which to calculate the actual shortage. The burden which plaintiffs assumed in order to establish their case was the burden of showing the difference between the actual amount of hay in the stack and that for which they had paid. This they did not do.

There seems to have been no error committed in the admission of testimony which should be characterized as prejudicial. Testimony given by the plaintiffs at a former trial was read in evidence, but all of this was fairly in the way of explanation of detached statements which had been read from the same record on cross-examination.

It appearing that the evidence was insufficient to sustain the finding of the court as to the alleged fact that there was a shortage in the quantity of hay sold and as to the amount thereof, the judgment and order must be reversed, and it is so ordered.

Allen, P. J., and Shaw, J., concurred.