[Civ. No. 5805. First Appellate District, Division Two.—August 1, 1927.]

DUNHAM, CARRIGAN & HAYDEN CO. (a Corporation), Respondent, v. THERMOID RUBBER COMPANY (a Corporation), Appellant.

J. H. Morris for Appellant.

J. R. Pringle and Clarence A. Shuey for Respondent.

KOFORD, P. J.—Appellant is a manufacturer of automobile tires. Toward the end of the year 1919 it solicited respondent as jobber and distributor to carry as its leader, and push the sale of, Thermoid tires and tubes manufactured by appellant. A written contract was signed by the parties in December, 1919, which by its terms covered the period ending December 31, 1920. The contract contained numerous provisions regulating the course of conduct of the parties in their business relationship, such as discounts, terms of settlement, extent of territory, exchange of goods, adjustments, and the like, together with other clauses which will be hereinafter more specifically referred to.

The parties carried on the business contemplated by the contract during the year 1920 in substantial fulfillment of its terms. Toward the end of the year respondent returned to appellant a considerable quantity of tires which it had held for almost five months. These tires were said to be growing obsolete and were returned in conformity with a clause of the contract permitting respondent to exchange, for new stock, tires which had not been in respondent's possession for more than five months. Appellant's representative declared that the return of these tires for exchange at that time would be a great embarrassment to appellant. He persuaded respondent to take them back again by giving assurance that, regardless of the five-months'

limitation of the exchange privilege contained in the contract, that respondent would be extended this privilege at any time and the five-months' limitation would be waived. Respondent agreed to this and took back the tires it had offered in exchange and attempted to sell them from time to time during the year 1921 as requested by appellant, and many of them were exchanged with appellant for new ones from time to time during the year 1921.

There was no formal renewal of the written contract for the year 1921, but during the course of 1921 and the close of 1920 the parties acted toward each other in all respects as though the contract were a continuing one. They continued doing business in all substantial particulars as in 1920 and as required by the contract for that year. During the close of 1920 representatives of the two parties conversed together concerning the contemplated business of 1921. They discussed a new advertising campaign for 1921. Preparations were made by respondent in 1920 for this campaign and it was carried out in 1921. During the year 1921 respondent continued to carry on hand a large stock of tires and toward the latter part of 1921 still had on hand a large stock, including some of the old tires which it had previously sought to exchange in 1920 as above stated. Toward the end of 1921 respondent gave notice of cancellation of the contract and, according to its provisions, demanded that appellant take back at cost all tires in the hands of respondent at the date of expiration of the contract. Appellant refused to do so and this action followed. The trial court awarded respondent damages against appellant for failure to take back and pay for the said tires.

The expiration clause of the contract read as follows: "This agreement shall commence on December 22, 1919, and continue in force until December 31st, 1920, inclusive, unless sooner terminated, it being expressly understood that it may in any event, be canceled by either party at any time by thirty days' notice in writing, and upon the event of cancellation you (appellant) agree to take back, and we agree to return to you, all tires and tubes in our stock at the date of expiration, at our cost, we to pay the return charges, in the event that we canceled same."

The complaint alleged, and the court found to be true, the following allegation: "That subsequent to Janu-

ary 10, 1920, and prior to November 29, 1921, respondent and appellant did agree that the life of said agreement of purchase and sale should be for the year 1921 as well as for the year 1920." Our examination of the record convinces us that this finding is supported by the evidence. A representative of respondent testified that in January, 1921, he asked a representative of appellant where the new contracts were and the latter replied, "that it was not necessary; that we were going along on this, that is the one we were going along under at that time." Aside from this, there seems to have been used by the parties no direct and express words of agreement to this effect, but the agreement is well established, by their course of conduct and the letters which they exchanged during the period of time they did business together. The dealings between the parties during the year 1921 and the nature of the letters they exchanged are very convincing that both sides fully believed that the 1920 contract was in force for 1921. The making of an agreement may be inferred by proof of conduct as well as by proof of the use of words. (1 Williston on Contracts, sec. 3.)

Appellant's obligation to take back and pay for tires and tubes in respondent's hands at the expiration of the contract (1921) is attacked by appellant as void under the statute of frauds. It claims that the 1920 agreement could not be extended for 1921 by parol agreement unless fully executed and that such an agreement by its very nature could not be fully executed until the very end of 1921. Respondent claims that appellant is estopped to raise the statute of frauds by its conduct in permitting and encouraging respondent, both in 1920 and 1921, to continue to hold on hand a large stock of merchandise and otherwise to fulfill the covenants of the contract in the belief that a valid return privilege existed. There is good authority supporting this argument. (*Carpy* v. *Dowdell*, 115 Cal. 677, 687 [47 Pac. 695]; *Seymour* v. *Oelrichs*, 156 Cal. 782 [134 Am. St. Rep. 154, 106 Pac. 88]; *Rockhill* v. *Parker*, 22 Cal. App. 367, 372 [134 Pac. 720]; *Reed* v. *McDonald*, 22 Cal. App. 701, 705 [136 Pac. 506]; *Flint* v. *Giguiere*, 50 Cal. App. 314 [195 Pac. 85]; *Price* v. *Smith Mfg. Co.*, 53 Cal. App. 303 [200 Pac. 53]; 12 Cal. Jur., Statute of Frauds, secs. 102, 103.) But it is not necessary to invoke the doctrine of

estoppel in this case because as contended by respondent, there is a sufficient note or memorandum subscribed by the party to be charged acknowledging the contract and satisfying the statute of frauds. Respondent's letters to appellant in 1921 contain numerous references to "our contract with you." These, of course, are not subscribed by appellant, but in one of appellant's letters to respondent, written October 31, 1921, referring to a proposed renewal contract for 1922 it is stated, "In view of the fact that our contract with you in a measure expires December 1, and in further view of the fact that the factory is desirous of having new contracts issued each year we will send you . . . our regular contract form. . . . There will not be very many changes in it with a possible exception of some very minor changes in territory." This reference to the contract is very brief, but is also very comprehensive and satisfies the statute of frauds. A similar reference to an unexecuted written contract has been directly held to be a sufficient acknowledgment under the statute of frauds in *Walsh* v. *Standart,* 174 Cal. 807, 810 [164 Pac. 795]. In view of this holding it is not necessary to consider other arguments made by appellant and respondent respecting the statute of frauds.

Appellant contends that respondent cannot recover under the contract because it has not fulfilled the volume and renewal clauses reading as follows:

"Volume. It is understood that we are to give you under this agreement minimum purchases of $250,000.00.

"Renewals. And the renewal to be based upon our fulfilling this agreement to your entire satisfaction, with an increase of 20%."

It is appellant's contention that if the contract was by any means extended through 1921 that these clauses had the effect of obligating respondent to buy from appellant in 1921 twenty per cent more than $250,000.00 worth of tires and that is a condition which must be fulfilled before a recovery upon the contract can be had. We think the renewal clause is not self-operative, but is a covenant which bound the appellant to renew the contract if respondent satisfactorily fulfilled the agreement for 1920 and agreed to increase the sales in 1921 as specified. It is a condition upon respondent's *right* to a renewal, but is by no means a limitation upon the parties' *power* of renewal. If the parties

both wished to renew the contract without the volume clause this renewal clause furnished no obstacle. So far as the volume clause is concerned, the court found against the contention of appellant. Appellant sought damages by a cross-complaint herein for its violation in the year 1920, but the court found that appellant was unable to furnish sufficient tires in that year to enable respondent to fulfill the clause and that the clause was by the mutual consent of the parties canceled and abrogated. With respect to the contract as applying to the year 1921 and upon which the court awarded respondent damages, the court's finding is that respondent performed all terms and conditions of the contract on its part to be performed. This finding may mean either that the clause did not exist as a part of the contract or that it was waived and abrogated, as in 1920. The evidence sustains the finding either way. Throughout the year 1921 nothing was stated between the parties concerning the volume of sales requirement. The large volume now claimed essential by appellant appears from the evidence to have been so far beyond all reasonable expectation at that time that it was never mentioned. On July 5, 1921, appellant wrote to respondent to the effect that its previous suggestion that respondent order tires was not made from any selfish reason, but because a tire shortage existed, that the factory was about a month behind with its orders, that the appellant had no "kick coming" and generally to the effect that the only reason for respondent to place orders at that time was to protect itself from running short. The evidence also shows that the general trend of the tire business was at that time quite poor and that the mutual efforts of all were directed to biding time in some fashion until conditions improved.

Appellant contends that the complaint fails to make sufficient allegations of notice of cancellation of the contract and tender of the tires on hand. We see no merit in the contention. The complaint sufficiently alleges notice of cancellation, demand that defendant take back the tires and the refusal of the defendant to comply with the demand.

The sufficiency of the evidence as well as the sufficiency of the complaint is by appellant challenged upon the same grounds. The plain meaning and purpose of the expiration or take back provision was obviously to justify

the distributor keeping on hand an adequate stock of tires (which under the circumstances here meant a large one) so that, in the event of the expiration of the contract either by cancellation or failure to renew, the distributor would not be left with a large stock on its hands without the protection of the manufacturer furnished and provided by the several covenants in the contract and by the comities of the trade existing by virtue of the relationship between manufacturer and distributor. The letters of respondent fairly and timely informed appellant of its decision to terminate the contract and to insist on the ''take back'' provision. It was a written offer and was itself a sufficient tender if any tender were necessary under the contract and conditions then existing. We have examined the letters of respondent notifying appellant of its decision to terminate the contract and we do not see that their polite phraseology nor respondent's expressed willingness to talk it over at appellant's request had the effect of making the notice and demand equivocal and uncertain.

■ Appellant insists that its demurrer to the complaint should have been sustained instead of overruled and particularly urges that the complaint was insufficient to show that respondent had a lien upon the stock on hand for the damages claimed on account of the failure of appellant to take or buy back the same. The original complaint was drawn in part upon the theory that respondent had a vendor's lien dependent upon possession and prayed for a foreclosure of this lien. It alleged that plaintiff had suffered detriment by reason of defendant's breach of obligation to repurchase the stock on hand in the sum of $65,540.26 and prayed for damages in that sum or so much thereof as remained as a deficiency after foreclosure sale. The complaint was at least sufficient as a statement of a cause of action for damages for breach of contract. After defendant's demurrer was overruled, plaintiff applied to the court for an order to sell the stock on hand described in the complaint upon the ground that the same was depreciating by time and light. The parties signed a written stipulation that such order and sale might be made. After the sale, plaintiff filed a supplemental complaint alleging the sale under the order of court made by consent, alleging that the net pro-

ceeds thereof had been paid to plaintiff by the sale commissioner, alleging that by reason thereof plaintiff's claim for detriment had been reduced by $24,683.91 and praying for the balance of the detriment. In view of this state of the record we must hold that the lien questions raised by the original pleadings are now moot even though respondent does not raise the point. It is true that the stipulation for the order of sale contained very full provisions to the effect that it should not in any way prejudice the rights of the parties whether of substance or of pleading, but we are unable to give this part of the stipulation effect. The plain fact is that the sale has been made, the money paid to plaintiff, a supplemental complaint filed and a trial had thereon. There is no longer any question of lien in the case, either of pleading or substance. If we should decide with appellant that there was no lien there would nevertheless be nothing for the trial court to do but deduct as it did the net amount of the sale from plaintiff's damages. This is exactly the same operation that would have to be followed if a lien did exist. In other words, whether the tires were sold under a lien or without a lien, the plaintiff would have to give credit for the amount derived from the sale. Appellant nowhere contends that the amount realized from the sale is inadequate.

We see no force in appellant's contention that there was no consideration moving to appellant either for the extension or renewal of the contract or the waiver of the volume clause. It seems obvious from the nature of the contract and relations between the parties that the handling and distribution of appellant's tires by the respondent was a sufficient consideration for the extension or renewal of the contract. Appellant's inability to supply all the tires ordered or respondent's continuing to act as distributor was a sufficient consideration for the waiver of the volume clause if it existed at all in the 1921 contract. There are so many reciprocal rights, duties, and privileges arising from the contractual relation between the parties hereto, that it seems idle to designate one covenant as a consideration for another. The mutual covenants are the consideration for the contract and also for any voluntary modification of the same.

For the foregoing reasons the judgment appealed from is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 31, 1927, and a petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 29, 1927.