[Civ. No. 4235. Third Appellate District.—February 9, 1931.]

J. A. WOLVIN, Respondent, v. FIRST METHODIST EPISCOPAL CHURCH OF PASADENA (a Corporation), Appellant.

'A. L. Rowland and Porter & Sutton for Appellant.

Morin, Newell & Brown and Edward R. Milliken for Respondent.

MR. JUSTICE Pro Tem. JAMISON Delivered the Opinion of the Court. — This is an action to foreclose a mechanic's lien brought by the contractor against the owner for contractor's fee or commission and for the amount remaining unpaid for labor and material. The plaintiff had judgment, from which the defendant has appealed.

In January, 1922, the appellant, in contemplation of the erection of a church building, employed T. B. Barber as its architect and thereafter in March, 1922, Barber conferred

with respondent, describing in a general way the kind of building desired, and asked for assistance in arriving at an estimate of its cost, no written specifications having been made at this time. Barber had with him blue-prints showing three of the floor plans and three elevations and a booklet, which showed a picture of the contemplated building. Thereafter, during the month of March, 1922, Barber and respondent made up an itemized statement of the cost of the building, setting out therein the various things which would be required in such construction, including a commission of $25,000 to be paid the contractor for his services, the total cost of the building including the said commission being estimated to be $470,000.

Respondent testified that on May 28, 1922, he had a conference with the members of the church board and at this conference he laid before them the itemized estimate theretofore prepared by himself and Barber. Some time later respondent was requested to submit his proposition to appellant for the construction of the building and on June 27, 1922, he wrote a letter to appellant's board of directors in which he offered, in accordance with the plans and specifications prepared by Barber, to construct the church building at a guaranteed cost of $470,000, including therein a commission of $25,000 for his services as contractor, donating $5,000 of this commission to the church, and, also, stating in said letter that this price included $7,050, covering the premium on a bond, that this bond was unnecessary, as payment would be made each month for materials and labor furnished and suggesting that, instead of a bond, appellant should hold the said commission until the building was completed and accepted, thereby saving to appellant the sum of $7,050.

On July 12, 1922, respondent received a letter from Don C. Porter, who was chairman of appellant's building committee, accepting respondent's offer, as contained in his letter of June 27, 1922, and stating that respondent was duly employed to construct the church building on the terms and conditions stated in his said letter, and that he was authorized to proceed with said work after July 14th, and that, if a more formal contract was desired, the same would be entered into after Barber, who was then absent, returned.

Respondent testified that on July 15th he received from Barber, the architect, plans for the foundation and basement

for one-half of the building, and some specifications consisting of twelve pages, the said twelve pages of specifications being the ones attached to the complaint; that shortly after July 15, 1922, respondent began work on the foundation of said building and thereafter continued work of constructing said building. On August 26, 1922, appellant and respondent executed a written contract for the construction of the church building, by the terms of which respondent agreed to provide labor and material and do all things necessary to the proper construction and completion of the building, as shown and described in the drawings and specifications prepared by Thomas B. Barber, architect. He also guaranteed that the cost of such construction would not exceed the sum of $437,950, exclusive of respondent's commission for services, which was placed at the sum of $25,000, less a donation of $5,000 to the church. The contract also provided that the owner, through its architect, could make changes in the drawings and specifications and require additional work, but in the event any additions or alterations were made in the plans, thereby increasing the cost of the building, such cost should be added to the cost of the building.

There is a conflict in the evidence as to the particular drawing and specifications to which the contract referred, respondent maintaining that they were the ones attached to his complaint and consisted merely of rough and incomplete sketches, showing the alterations and incomplete floor plans, consisting of some twelve pages, which had been given him by the architect on July 15, 1922; while, on the other hand, appellant contends that the drawing and specifications to which the contract referred, consisted of some forty-two pages and included the twelve pages attached to the complaint. Appellant, also, contends that the court erred in failing to find which set of drawings and specifications were referred to in the contract. The finding of the court was as follows: "The court finds that no plans or specifications were attached to the contract of August 22, 1922, or otherwise identified at that time to the satisfaction of the court, except the two outlines of the first floor plans, three exterior elevations and an estimate sheet or budget referred to, which while not attached to the contract, or otherwise authenticated by the parties was the basis for plaintiff's guarantee, and that the contract, so far as it mentioned a

guarantee of the cost of the structure, was ambiguous, uncertain and incomplete and from the evidence offered the court finds that it was the intention of the parties, in the agreement of August 26th, wherein a guarantee of the cost of construction was involved, to guarantee the cost of such building respecting the material to be used and the character of the building to be constructed as the parties represented by the architect for the church and the plaintiff agreed upon prior to June 27th 1922.''

The respondent produced evidence to the effect that the plans and specifications which appellant claims were the ones referred to in the contract of August 26th, were not exhibited to him at the time said contract was executed, nor were they attached to the said contract, nor did he have any knowledge of them until about the 12th of October, 1922, when they were brought to his notice.

While the court did not expressly find that the plans and specifications referred to in the second contract were not the ones claimed by appellant to have been referred to therein, it did by implication so find.

It is well established that a judgment will not be reversed because of a failure to make an express finding upon an issue, if the finding therein is necessarily implied from the findings made. (24 Cal. Jur. 974; *Shepard* v. *Yale,* 94 Cal. App. 104 [270 Pac. 742].)

The next contention of the appellant is that the court erred in permitting respondent to introduce, over its objection, evidence of the negotiations and transaction between the parties leading up to the execution of the contract of August 26th. This objection was based upon the well-recognized rule that when the terms of the agreement are reduced to writing, no evidence other than the contents of the writing is admissible. (Code Civ. Proc., sec. 1856.) Subdivision one of this section provides an exception to this rule as follows: ''Where a mistake or imperfection of the writing is put in issue by the pleadings.'' The drawings and specifications to which the contract of August 26, 1922, referred, were not signed by the parties, nor did they bear any distinguishing mark by which they could be identified. The answer of appellant denied that the rough and incomplete drawings and specifications attached to the complaint were the ones to which said contract referred, but on the contrary alleged that drawings and specifications attached

to appellant's answer were the ones to which reference was made therein, thereby putting in issue the question as to what drawings and specifications were referred to in said contract. Under these circumstances, evidence of the transactions between the parties leading up to the contract which tended to throw light upon this question was admissible.

■ The court found that appellant, by its architect, did not observe the limitations of the plans for the building, as contemplated on June 27, 1922, but departed therefrom in many respects, and that solely by reason of the departure of appellant from the agreed plans and material upon which respondent's guarantee was based, the cost of the structure was caused to run greatly in excess of the guarantee. And that no definite plans sufficient in character to enable the definite cost of the building to be ascertained, were furnished by appellant, or its architect, to respondent at any time on or prior to August 26, 1922, nor thereafter, except from time to time, as the building progressed and these findings are supported by the evidence.

The evidence produced on the part of respondent was to the effect, that within a few days after he began work on the building, changes in the plans as then outlined, and additions thereto, began to be made and thereafter continued to be made until the building was almost completed, and that these changes and additions were responsible for the increased cost of the building. We are of the opinion that the offer of respondent of June 27, 1922, and the acceptance of such offer by appellant of July 12, 1922, constituted the contract upon which the guarantee of respondent was based.

The said offer of respondent that he would construct the building in strict accord with the plans and specifications prepared by the architect had reference to the drawing and estimate sheets which the architect had previous to that time prepared, and which had been exhibited to the appellant's building committee prior to said offer by respondent, for at that time there were no other plans and specifications of said building in existence, and, in accepting the said offer by the letter of July 12, 1922, appellant did so with knowledge that the only plans and specifications that had up to that time been prepared by its architect were the drawings and estimates that had been exhibited to them at their said meeting on May 28, 1922.

Appellant maintains that the finding relating to its counterclaim is insufficient. This finding is as follows: "The court finds that the evidence fails to establish the allegations of defendant's counterclaim."

Admitting that this finding may be subject to criticism, yet from the facts found and the judgment ordered, it is evident, in the light of the entire record, that if more complete findings had been made they would have been adverse to the contention of appellant. Such being the case, the failure to find further on this issue is not ground for reversal. (*Hulen* v. *Stuart*, 191 Cal. 562 [217 Pac. 750]; *Kling* v. *Gustafson*, 101 Cal. App. 58 [281 Pac. 407]; *Reveal* v. *Stell*, 56 Cal. App. 463 [205 Pac. 875].)

The evidence throughout the trial was conflicting, but it sufficiently supports the allegations of the complaint, its amendment and the findings, and such being the case, the judgment rendered thereon is binding on this court. (2 Cal. Jur. 921.)

Appellant alleges that numerous other errors than those considered in this opinion were committed by the court in the trial of this case. We have examined these alleged errors and, in our opinion, none of them are sufficient to warrant a reversal.

Judgment affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 11, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 6, 1931.