[Civ. No. 10161.   First Appellate District, Division Two.—December 16, 1936.]

COOPERATIVE DAIRYMEN'S LEAGUE (a Corporation), Appellant, v. THE LUCERNE CREAM AND BUTTER CO. (a Corporation), Respondent.

Decoto & St. Sure for Appellant.

Edward M. Selby, Milton L. Selby and Drummond Wilde for Respondent.

STURTEVANT, J.—In an action brought to recover moneys alleged to be due under a written instrument the trial court made findings in favor of the defendant and from the judgment entered the plaintiff has appealed.

On January 17, 1931, Cooperative Dairymen's League, a corporation, entered into a contract with Dairyland Products, Inc., under the terms of which the former agreed to sell and the latter agreed to buy the marketable cow's milk delivered by the seller. The contract was in writing and contained certain blanks to be filled but they were never filled. One of such provisions was as follows: "Term of contract: This agreement shall be and remain in force for the period of six months from the — day of ——, 190— to the — day of ——, 19—, inclusive, and thereafter from month to month until terminated by either party hereto by giving sixty (60) days notice in writing to the other of its desire to terminate." That contract was modified on July 17, 1931. The latter instrument provided: " . . . the contract shall continue in force for one (1) year from the 17th day of July, 1931, to the 17th day of July, 1932." Thereafter, on May 2, 1932, the Lucerne Cream and Butter Company took over the Dairyland creamery in Oakland. On May 6th an agreement was executed by Cooperative Dairymen's League as seller and Lucerne Cream and Butter Company as buyer. It refers to and adopts the original agreement and the agreement of modification just above referred to. For the convenience of the parties the Lucerne executed *de novo* the agreement dated January 17, 1931, and the agreement dated July 17, 1931, and forwarded them to the Cooperative Dairymen's League together with a letter in which it was stated: "The enclosed agreements are intended to supersede the agreements executed by Dairyland Products, Inc., effective as of the date upon which we acquired the assets formerly owned by the Dairyland Products, Inc." On the contract so evidenced the plaintiff sued

for moneys which it claimed fell due from May, 1932, to March, 1933, both months inclusive.

The plaintiff contends that the original contract between the parties as modified by the supplemental agreement of May 6, 1932, remained in full force and effect until March 31, 1933. As noted above the instrument dated January 17, 1931, by failing to fill in the blanks, did not state any date of termination. The instrument dated July 17, 1931, expressly provided that it would terminate on the 17th day of July, 1932. The agreement dated May 6, 1932, was silent on the subject. During the trial the plaintiff contended that it had the right by parol to show that the contract was extended to March 31, 1933. (*Streff* v. *Gold Medal Creamery Co.*, 96 Cal. App. 18 [273 Pac. 831]; *Dunham, Carrigan & Hayden Co.* v. *Thermoid Rubber Co.*, 84 Cal. App. 669 [258 Pac. 663].) It is sufficient to state that evidence was offered and received from both parties on that issue. The trial court made a finding thereon in favor of the defendant. It follows that the contention of the plaintiff may not be sustained.

The plaintiff's second and third points are closely related. In both it claims that some market milk was paid for as manufacturing milk. The vice in that contention is that the contract expressly so provided. There was considerable evidence introduced and the court found the facts to be that from other parties the defendant bought quantities of "surplus milk"; it bought from this plaintiff market milk and paid therefor according to the amount of butter fat it contained as provided in the supplemental agreement dated May 6, 1932; and it also bought from this plaintiff a large quantity of "surplus milk" which it used for manufacturing purposes and paid therefor the price for manufacturing milk as stated in the same agreement. The evidence shows that upon receipt, each delivery was weighed and tested. Each party kept its own account. The deliveries were not kept separate but were mixed. Assuming, for the purposes of the points we are now discussing, that all three of the agreements were in force from May 6, 1932, to March 31, 1933, according to their terms the defendant agreed to " . . . purchase from seller all market milk which buyer may or will market . . . " The uncontradicted testimony was that all milk in excess of the amount

necessary for use by the defendant for market milk pur-
poses is "surplus milk". The terms are exclusive. Under
the modified contract of May 6, 1932, all milk pasteurized
by the defendant was "to be paid for at the full base prices
for market milk" and "milk other than route returns, used
for manufacturing purposes by the buyer" was to be paid
for on an average to be made as stated in the contract.
Both of those quantities were, of course, confined to the milk
received under the written contracts as "market milk". No
covenant set a price on "surplus milk", but it was paid for
as manufacturing milk. Counsel do not call to our atten-
tion any part of the record showing that market milk re-
ceived and used as such was not paid for as such; nor that
any market milk used for manufacturing purposes was not
paid for; nor that any surplus milk received as such was
not paid for as such. There was no evidence that any milk
received from plaintiff as market milk and used by the de-
fendant for that purpose was paid for as manufacturing
milk; nor, if there was any such item, the amount thereof.
In other other words, the plaintiff assumes all milk received
by defendant, with the exception of the deliveries made by
Mini Estate Company, was received by it under the three
written instruments hereinabove referred to. But as we
have shown it was not all received under said contracts.
Much was received otherwise. Then all was so mixed that
the deliveries lost their identity and the bookkeeping ac-
counts do not furnish the data from which the computations
relied on by the plaintiff can be correctly compiled.

The last point made by the plaintiff is that the trial
court committed prejudicial error because it found the con-
tract between the parties was not exclusive and it failed to
find on material issues raised by the pleadings. To show
the contract was exclusive the plaintiff quotes from the in-
strument dated January 17, 1931. That document con-
tained this sentence: "It being of the essence hereof that
seller shall be the sole and exclusive source or agency from
or through which buyer shall, may or will purchase addi-
tional market milk during said period." True it is that
said sentence contains language which would tend to sup-
port the contention of the plaintiff. True it is that said
sentence was not thereafter stricken out of the contract be-
tween the parties. However, on May 6, 1932, the parties

executed the last written instrument expressing their intentions. It contained several paragraphs. To refute the position of the plaintiff we think it is sufficient to quote the following: "3. Buyer shall report to seller weekly on seller's present standard 'Form One' all milk received by buyer from all sources; including milk received from seller, from independent producers, from ranches of buyer, or from other dealers." Bearing in mind that the original contract was executed by Dairyland Products, Inc., and that the supplemental instrument was executed by the Lucerne Cream and Butter Company, it is quite clear the covenants of the parties as expressed in the earlier agreement were materially changed in the last agreement.

As a part of the last point the plaintiff claims certain material issues were not found upon. It shows that the defendant pleaded certain stated accounts and it asserts no finding thereon was made. Paragraph IV purports to be a finding on the issues mentioned. At least by implication it is a finding on the entire issue. (*Shepard* v. *Yale*, 94 Cal. App. 104 [270 Pac. 742]; *Wolvin* v. *First Methodist Episcopal Church*, 111 Cal. App. 643 [295 Pac. 1085].) Furthermore, as the court had made full findings on the allegations of the plaintiff's complaint and such findings were adverse to the plaintiff and supported the judgment, it was immaterial whether the affirmative defense set up in defendant's answer was, or was not, true. (*Wolfsen* v. *Smyer*, 178 Cal. 775, 785, 786 [175 Pac. 10].)

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.