[Civ. No. 1349.   Second Appellate District.—June 19, 1913.]

EVA L. ROCKHILL, Appellant, v. E. T. PARKER, Defendant and Respondent; GEORGE L. COSART, Defendant.

QUIETING TITLE—VERDICT OF JURY—REVIEW OF INSTRUCTIONS.—In an action to quiet title, the verdict of a jury on an issue as to the right to specific performance of a contract is merely advisory to the court, and therefore instructions to the jury will not be reviewed on appeal.

ID.—FINDINGS UNSUPPORTED BY EVIDENCE—REVERSAL OF JUDGMENT.—
If in such action the court finds that a written contract providing
for the transfer by the plaintiff to the defendant of one-half of
the land in controversy and seventy shares of water stock, upon
the defendant making certain improvements on the land, had been
canceled, and then finds, without any evidence touching the matter,
that by an oral contract the plaintiff agreed at the same time to
transfer the water stock, the judgment must be reversed because
such finding is without support.

ID.—STATUTE OF FRAUDS—ESTOPPEL TO PLEAD.—If the plaintiff allowed
the defendant to expend money in making improvements in setting
out orange trees on the land, relying on an oral agreement by the
plaintiff to convey him a part of the land with certain water stock,
the plaintiff will be estopped to set up the statute of frauds as a
defense to such contract.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge.

The facts are stated in the opinion of the court.

Crouch & Crouch, for Appellant.

Shaw, Ross & Dyke, for Respondent.

SHAW, J.—Plaintiff filed her complaint in the usual form to quiet title to the southeast quarter of a section of land situated in Imperial County. Defendant Parker filed an answer and cross-complaint whereby he disclaimed any interest in the west half of said quarter section, but alleged that under and by virtue of a contract he claimed the east half thereof adversely to plaintiff, in whom the legal title was vested, and in effect asked for a decree of specific performance requiring her to execute a deed conveying the same to him in accordance with her contract so to do. Judgment went for defendant Parker, from which plaintiff appeals.

It appears that Parker (who, as shown by the evidence, is a brother of plaintiff) and his codefendant Cosart, who made default herein, did, on February 19, 1908, enter into a written contract with plaintiff, who was the owner of a quarter section of unimproved desert land, to the effect that defendants should prepare the land, furnish, and at their own expense set out one hundred acres thereof, to be selected by them,

in Washington navel orange trees and cultivate the same for three years, paying all water assessments and taxes levied upon said quarter section, at the end of which time plaintiff should convey to defendants one-half of said quarter section, together with seventy shares of water stock. With reference to the time when the trees should be planted, the contract provided that defendants should proceed immediately with the work, and if unable during the first season (1908) to set the entire one hundred acres to trees, the remainder thereof should be planted the ensuing season of 1909. While the contract provided for an equal division of the quarter section, it was silent as to the particular half thereof (whether north, east, south, or west) which either party was to have, it being provided that such division, if the parties could not agree, should be determined by arbitrators.

The answer and cross-complaint in substance alleged that immediately upon the execution of the contract defendants entered upon the performance of the terms thereof and up to about July 1, 1909, performed all of the terms and conditions of the same; that about July 1, 1909, cross-complainant, with the consent and approval of plaintiff, purchased Cosart's right and interest in said contract for the sum of four thousand five hundred dollars, in consideration of which purchase and the fact that plaintiff and defendant Parker determined that it was undesirable to carry out the terms of said written contract, and that in the division of the land the plaintiff should have the west half thereof and Parker should have the east half thereof, and in order to settle and determine other matters in dispute, or which by reason of uncertainty in said contract might become the subject of dispute, they then and there entered into an oral agreement whereby plaintiff and defendant Parker agreed that such written contract should be canceled and annulled, and said Cosart released from the performance of any and all of its conditions, which said oral agreement and its terms should be substituted in place and in lieu of said written contract; that by the terms of said oral contract it was agreed that defendant Parker should, during the next ensuing season—that is, 1910—in addition to the orchard theretofore planted on the west half of said quarter section, which in the division to be made should be retained by plaintiff, set out such number of Wash-

22 Cal. App.—24

ington navel orange trees as would, together with the acreage theretofore planted, make in all fifty acres planted to orchard upon the west half of said tract, and cultivate the same until February 19, 1911, at which time possession thereof should be delivered to plaintiff; it being understood that said Parker should assume all of the expense and cost of trees and the planting and cultivation thereof, together with the payment of assessments for water to be used on said land, and taxes up to February 19, 1911, at which time plaintiff should by sufficient deed convey to him the east eighty acres of said tract, and by proper assignment transfer to him seventy shares of water stock of Imperial Water Company No. 6; that defendant Parker thereupon took exclusive possession of said quarter section and in pursuance of said oral agreement performed all of the terms, provisions, and conditions thereof down to February 19, 1911, at which time he delivered possession of the west eighty acres of said quarter section to plaintiff, who then and there accepted the same and continues in possession thereof; that after the making of said oral agreement defendant Parker, relying upon the promise made to him by plaintiff that she would convey to him the east half of said quarter section upon the performance on his part of the terms thereof, secured the assignment from Cosart, paying him therefor four thousand five hundred dollars, and in the performance of the terms of said oral agreement planted upon said west half of the tract upwards of three thousand trees; that likewise in reliance upon the promise so made by plaintiff, he made permanent improvements upon the east half of said tract, in the construction of a dwelling-house, barn, fences and other work, which are of the value of four thousand five hundred dollars.

The procedure adopted at the trial was novel in that the court made and filed its findings upon all the issues, and also submitted the same upon instructions to a jury, which brought in a general verdict for defendant Parker. The action was brought under section 738 of the Code of Civil Procedure, the purpose of which is "to compel others, by suit, to litigate and determine controversies in cases where such right did not exist before." (*Donahue* v. *Meister*, 88 Cal. 121, [22 Am. St. Rep. 283, 25 Pac. 1096].) In such cases issues may be presented triable by jury. The complaint in the case at bar,

however, tenders no such issue. While the prayer asked for the issuance of a writ of possession, it is not alleged that plaintiff is out of possession. We must, therefore, look to the answer and cross-complaint to ascertain the issues. A reference to this pleading discloses that defendant admits the legal title to the land involved is vested in plaintiff, as alleged, and while admitting his possession thereof, claims no right to such possession, except under and by virtue of the oral contract alleged to have been made under the circumstances set forth in his pleading, the terms and conditions of which he alleges he had, in reliance upon plaintiff's promise to deed to him the land, fully performed. His right to possession depends alone upon his right to have the contract specifically performed, and the determination of this equitable question was an issue triable by the court (Code Civ. Proc., sec. 592), which could, if it desired so to do, call a jury to which any special issue of fact might be submitted, in which case the verdict is not binding upon the court, but merely advisory. (*Sweetser* v. *Dobbins,* 65 Cal. 529, [4 Pac. 540]; *Moore* v. *Copp,* 119 Cal. 429, [51 Pac. 630].) It seems clear to us that no issue of fact was presented upon which either party was entitled to the general verdict of a jury, or that such verdict, if rendered, could form the basis for a judgment. (*Crocker* v. *Carpenter,* 98 Cal. 418; [33 Pac. 271]; *Churchill* v. *Louie,* 135 Cal. 612, [67 Pac. 1052].) Holding this view of the case, it is unnecessary to discuss the alleged erroneous instructions given to the jury, since in no event was the verdict binding upon the court. (*Hewlett* v. *Pilcher,* 85 Cal. 542, [24 Pac. 781]; *Schneider* v. *Brown,* 85 Cal. 206, [24 Pac. 715]; *Sweetser* v. *Dobbins,* 65 Cal. 529, [4 Pac. 540].)

It is suggested that the erroneous submission of the issues to a jury for a general verdict was not prejudicial, inasmuch as the court found in favor of defendant upon all the material issues presented. Conceding this to be true, the judgment must nevertheless be reversed for the reason that the court found that the written contract, which provided for the transfer and assignment of seventy shares of water stock, had been canceled and annulled, and then found, *without any evidence whatsoever* touching the matter, that by the oral contract plaintiff agreed that she would "at the same time (February 19, 1911) transfer to him seventy shares of the

water stock of Imperial Water Company No. 6, then located upon said property, without further cost to said defendant E. T. Parker.''

While the judgment must be reversed for the reason that such finding is without support, and, in the absence thereof, there is nothing to support that part of the judgment awarding defendant a transfer of the water stock, we deem it proper, since there may be another trial of the case, to discuss the chief point urged by appellant against any recovery whatsoever on the part of defendant. She invokes the statute of frauds, insisting that the cross-complaint fails to state a cause of action because it appears therefrom that the oral contract alleged to have been made was invalid, in that it was one the terms of which were not to be performed within a year from the making thereof, as required by subdivision 1 of section 1624 of the Civil Code. It is well settled that a court of equity may hold one estopped from asserting the statute of frauds as a defense where such assertion would amount to practicing a fraud. Says the author, 2 Pomeroy's Equity Jurisprudence, section 921: "The statute of frauds . . . shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme.'' In *Glass* v. *Hulbert,* 102. Mass. 24, [3 Am. Rep. 418], it is said: "The fraud most commonly treated as taking an agreement out of the statute of frauds is that which consists in setting up the statute against its performance, after the other party has been induced to make expenditures, or a change of situation in regard to the subject matter of the agreement, or upon the supposititon that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of frauds.'' (See, also, Browne on Statute of Frauds, 5th ed., sec. 457a.) "The vital principle is,'' says the supreme court of the United States in *Dickerson* v. *Colgrove,* 100 U. S. 580, [25 L. Ed., 618], "that he who, by his language or conduct, leads another to

do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted.  Such a change of position is sternly forbidden.  It involves fraud and falsehood, and the law abhors both.''  No demurrer was interposed to the cross-complaint and while the facts are inartificially pleaded, we entertain no doubt as to their sufficiency, if true, to constitute grounds for relief on the part of defendant.

Appellant directs our attention to a great number of alleged errors of law occurring at the trial, based upon rulings of the court in admitting and rejecting evidence.  While many of her contentions in this regard are meritorious, still no good purpose could be subserved in discussing them, since upon a retrial of the case upon an amended cross-complaint, if defendant be so advised, a repetition of the alleged errors may not occur.

The judgment is reversed.

Allen, P. J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 19, 1913, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 18, 1913.