[Civ. No. 8724. Third Dist. June 28, 1956.]

MANUEL FRANK, as Administrator, etc., Plaintiff and Respondent, v. MARIA TAVARES, Appellant; PAUL HORNUNG, Cross-Complainant and Respondent.

Park Chamberlain and Earl C. Berger for Appellant.

Lounibos & Lounibos and John A. Condit for Plaintiff and Respondent.

Baker, Palmer & Wall and Baker, Palmer, Wall & Raymond for Cross-Complainant and Respondent.

McMURRAY, J. pro tem.*—A jury returned verdicts in favor of Manuel Frank, as administrator of the estate of

*Assigned by Chairman of Judicial Council.

Elsie Tavares Frank, his deceased wife, in the sum of $11,925 and in favor of Paul Hornung, a friend of the deceased Elsie Frank, in the sum of $3,075. Maria Tavares, the mother of Elsie, appeals from the verdicts against her and from a judgment rendered by the court which adopted these verdicts.

In 1948 Paul Hornung gave Elsie Frank approximately $25,000 with which to build and furnish a house upon the understanding that she would provide him with a home and nursing care for the rest of his life. Hornung was some 30 years Elsie's senior and did not anticipate that she would predecease him. He had first met Elsie when she nursed him through an illness some 20 or 25 years previously. The house was built upon a ranch owned by Maria Tavares who, the evidence shows, had told her only daughter Elsie, that she would deed to Elsie the property upon which the house was located. Elsie died suddenly in April of 1950, and within a week after her burial appellant, Maria Tavares, took possession of the house and asserted exclusive ownership thereof. Respondent Frank, as administrator of his wife's estate, brought the present action to specifically enforce the promise of appellant to convey the property to Elsie or in the alternative to recover $25,000 as damages or to impress a trust upon the property in the amount of the value of the house and furnishings. There was no dispute between Hornung and Frank as to Hornung's right to a life interest in the property, as Hornung had in writing disclaimed any interest in the house and in this matter only sued Maria for the value of the furniture and the occupancy of the house.

On this appeal appellant raises the following questions: (1) Where identical facts must be proved in order to entitle the plaintiff to relief at either law or equity and where the jury finds specially that such facts were not proved, but at the same time renders a general verdict in favor of plaintiff, may the trial court uphold such verdict on the theory the general verdict and special findings were applicable separately to "legal" and "equitable" issues, and that the special findings, therefore, do not control? (2) Where the statute of limitations had been pleaded as a defense, and where conflicting evidence has been presented thereon, may the court withdraw that issue from the jury? (3) May a court instruct the jury that it may find for the plaintiff on a theory of recovery not pleaded in the complaint? (4) May a verdict based on fraud be found where there was no evidence

of fraud, in fact, no relationship, contact, or communication between the alleged defrauder and her victim?

In the course of the trial certain interrogatories were submitted to the jury. These interrogatories and the jury's verdicts thereon were as follows:

"We, the jury in the above entitled matter, do find:

"1. Did Maria Tavares, on or about February 7, 1948 orally promise to give to her daughter, Elsie Tavares Frank, a portion of land on the Tavares ranch to be selected by Elsie Tavares Frank upon which a dwelling house would be built by Elsie Tavares Frank? Answer: Yes.

"2. Did Elsie Tavares Frank spend any money or erect any building in reliance upon the oral promise of her mother, Maria Tavares, to give land to her? Answer: Yes.

"3. If money was spent by Elsie Tavares Frank in reliance upon the oral promise of Maria Tavares, how much money was expended by her for the erection of the house, the furnishings of the house, the digging of a well, and the planting of a garden? Answer: $25,000.00.

"4. If any money was spent by Elsie Tavares Frank for the purposes mentioned in question No. 3, how much, if any, of the money was furnished Elsie Tavares Frank by Paul Hornung? Answer: $25,000.00.

"5. Was there an oral agreement between Paul Hornung and Elsie Tavares Frank that Paul Hornung could live in the dwelling house constructed by Elsie Tavares Frank for the remainder of his life? Answer: Yes.

"6. Was there a relationship of mutual trust and confidence on or about February 7, 1948, between Elsie Tavares Frank and Maria Tavares, her mother? Answer: Yes.

"7. Did Paul Hornung, in reliance upon the oral promise, if any, of Maria Tavares to give a deed for land to Elsie Tavares Frank, give money to Elsie Tavares Frank for the construction of the dwelling house? Answer: Yes.

"8. Did Elsie Tavares Frank demand of Maria I. Tavares that she transfer to her the land on which the house was erected? Answer: No.

"9. Did Maria I. Tavares plan to deceive and mislead her daughter by permitting her to erect a home on such property and by not intending to convey said property to her daughter? Answer: No.

"10. Did Maria Tavares and Elsie Tavares Frank, her daughter, agree that the ownership of the house would revert to Maria Tavares in the event that Elsie Tavares Frank ceased to occupy the same? Answer: No."

The trial judge made certain findings of fact after adopting the verdicts of the jury, and in one respect made a finding of fact contrary to that made by the jury. In answer to interrogatory No. 8, the jury found that there had never been a demand by Elsie upon Maria that she transfer to her the land upon which the house was erected. The court found as follows: "That following the erection of said home and the furnishing of said home, the said decedent made repeated demands, orally and in writing, upon the defendant Maria I. Tavares that the said Maria I. Tavares transfer to said decedent as per her oral agreement, the title to the land upon which this dwelling house had been erected. That the said Maria I. Tavares failed, neglected and refused to transfer the said title to the real estate, or any portion thereof, to the decedent; that up to the time of the death of said decedent, the defendant Maria I. Tavares promised to transfer said title to the real estate, but continued to delay in the actual execution of said deed."

Under the evidence adduced at the trial, the finding of the jury that there was an oral contract for the conveyance of the land finds substantial evidence to support it. Therefore, the apparent inconsistency between the trial court's finding and the finding of the jury is immaterial. The jury was acting within its province in so finding and the action of the trial court in finding repeated demands had been made was mere surplusage. ■ A party is estopped to plead the statute of frauds where one party to an oral contract for the sale of real property has permitted the other party, solely in reliance upon such contract, to enter into possession of the property and make valuable improvements thereon. (*Rockhill* v. *Parker*, 22 Cal.App. 367 [134 P. 720]; *Stepp* v. *Williams*, 52 Cal.App. 237 [198 P. 661].) ■ In this case the close relationship between the mother and her only daughter is a fiduciary one. This being so, the apparent inconsistency complained of by appellant between the special and the general verdicts disappears. Appellant contends that under the case of *Aguirre* v. *Alexander*, 58 Cal. 21, the inconsistency between the verdicts was fatal since it could not be reconciled with the ultimate finding of the jury. That is not the case here. There was an oral contract found, and an oral contract which is enforceable because of the relationship between the parties. Whether or not any demand was made by Elsie upon her mother has no bearing whatever upon the case when the verdicts in this matter are read and considered.

The next point urged by appellant as to the statute of limitations is without merit. She urges that the question of whether or not the statute of limitations had run should have been submitted to the jury since there was conflicting evidence. The trial court was undoubtedly aware of the rule that if the plaintiff and defendant were fiduciaries, there is no duty of inquiry until that relationship is repudiated. Here, the relationship was not repudiated, but terminated upon the death of Elsie on April 23, 1950. The complaint was, therefore, as a matter of law timely filed on July 27, 1951. (*Knapp* v. *Knapp*, 15 Cal.2d 237 [100 P.2d 759]; *Laraway* v. *First National Bank*, 39 Cal.App.2d 718 [104 P.2d 95]; *Lee* v. *Hensley*, 103 Cal.App.2d 697 [230 P.2d 159].) Furthermore, where one person has paid a full purchase price and otherwise performed all the conditions in an agreement for the purchase of land (here, the contract is tantamount to an agreement of purchase and sale, the consideration being Elsie's building the house upon Maria's land), and the vendee has fully performed and has entered into possession of the land, the statute does not run while the vendee is in possession with the acquiescence of the vendor. (*Hermosa Beach etc. Co.* v. *Law Credit Co.*, 175 Cal. 493 [166 P. 22]; *Fleishman* v. *Woods*, 135 Cal. 256 [67 P. 276].) Under this view of the law, there was no conflict in the evidence as to the running of the statute of limitations. The court was correct in instructing the jury in this case that they should not consider the statute of limitations. There was no testimony that the confidential relationship had been repudiated before Elsie's death or that there had been any ouster of possession during Elsie's lifetime.

 Appellant's next point is that the trial court erred in instructing the jury that it could find a verdict for plaintiff on the theory of unjust enrichment, contending that, under such a theory of recovery, there must be some wrong-doing or actual fraud. Such is not the law. Here, it is evident that a woman obtaining possession of a house to which she had contributed nothing and asserting that she should be entitled to keep the house merely because she failed to perform a promise which she made to her deceased daughter has brought herself well within the doctrine of quasi contract. (Rest., Contracts, § 90.) However, there is no reason to conclude that the jury based its verdict for respondent Frank upon a theory of quasi contract or unjust

enrichment as it is apparent that the basis of that verdict was upon an oral contract performed by one party in a confidential relationship to the nonperforming party. ■ An instruction to the jury upon the doctrine of unjust enrichment under the pleading here was proper in any event, as there is no particular form of pleading necessary to invoke the doctrine, and a common count is sufficient basis for the finding of a quasi contract in the award of damages for unjust enrichment. (5 Cal.Jur.2d 527.)

■ The last point urged by appellant is contained in the question : May a verdict based on fraud be found where there was no evidence of fraud, in fact no relationship, contact or communication between the alleged defrauder and her victim? This point is concerned with the fact that respondent Hornung in his pleading alleged as the basis for recovery that he had been defrauded by Maria and that the jury by its findings in the special interrogatories had found expressly against any fraud being practiced. It would seem self-evident that the jury's general verdict for respondent Hornung was based upon a theory of quasi contract founded upon the unjust enrichment of the cross-defendant and appellant by her depriving cross-complainant of the use of the property. The mere fact that recovery was not sought in the pleading in the device of pleading a common count is not in any way detrimental to the cross-complaint. The pleading is certainly sufficiently broad to allow recovery by the cross-complainant, and where, as here, a matter has been tried without any objection during the trial, the rule enunciated in *Edwards* v. *Edwards,* 90 Cal.App.2d 33 [202 P.2d 589], should be applied; that is, that where a matter has been tried under certain pleadings, plaintiff's right to relief should not be denied upon appeal because of defects in the pleading. (See also *Swanson* v. *Hempstead,* 64 Cal.App.2d 681 [149 P.2d 404].) The rule applicable here is well stated in *Sears* v. *Rule,* 27 Cal.2d 131, at page 140 [163 P.2d 443], where it is said : ''It is, of course, immaterial that the theory upon which the judgment may be affirmed is not identical with that relied upon by plaintiffs or by the trial court, since plaintiffs are required only to plead and prove facts sufficient to justify relief, and the trial court's judgment must be affirmed if the findings, supported by the evidence, are sufficient to warrant the relief granted on any legal theory.'' The conclusion of the jury and of the trial court that re-

spondents should recover from Maria Tavares is certainly supported by the evidence, and there appears to be no reversible error.

The judgments appealed from are affirmed.

Van Dyke, P. J., concurred.