50 F.3d 13
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William T. BRADY; James Cardwell; Dar-Kel Corporation,
Plaintiffs-Appellees,
v.
Chester P. BROWN, Defendant,
and
Lorna Brown De Mena; Eric Brown Castelazo; Nelly Lozano De
Brown, Defendants-Appellants,
and
Maria De Los Angeles Castelazo De Brown,
Defendant-counter-claimant/Appellant,
v.
HOTEL LAS ARENAS, S.A. DE C.V., Counter-defendant/Appellee.
William T. BRADY; James Cardwell; Del-Kel Corporation,
Plaintiffs/Appellees,
v.
Chester P. BROWN, Defendant/Cross-Claimant/Appellant,
v.
HOTEL LAS ARENAS, S.A. DE C.V., Cross-defendant/Appellee.
 Nos. 93-55669, 93-55683.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1994.
Decided March 21, 1995.
 
 Before: FLETCHER, BOOCHEVER, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 California businessmen William Brady and James Cardwell sued Chester Brown and Brown's family, alleging that Brown defrauded them by transferring to his family all the interests in Mexican coastal property in which Brady and Cardwell had invested, while representing that he was acting to comply with Mexican restrictions on foreign investment. The district court found that Brown had defrauded Brady and Cardwell, and ordered Brown and his family to transfer all their interests in the property into a trust for the benefit of Brady and Cardwell. Brown and his family appeal the district court's judgment against them on numerous grounds.[1] We affirm.
 
 I. Attorney-client relationship
 
 3
 The district court applied Mexican law to determine whether Brown had an attorney-client relationship with Brady and Cardwell. The parties do not contest this choice of law. Brown claims, however, that the district court erred in finding that Brady and Cardwell were Brown's clients, and that he acted as their attorney. He apparently believes that in so finding the court found he was Brady and Cardwell's fiduciary.
 
 
 4
 Under Mexican law, a client must grant a formal power of attorney before an attorney-client relationship is established. Without a power of attorney, an attorney may render services to the client but is not the client's fiduciary. This differs from the law in California, which finds a fiduciary relationship when the attorney renders services to the client. See Miller v. Metzinger, 154 Cal.Rptr. 22, 27-28 (Cal.Ct.App.1979).
 
 
 5
 The district court found that no power of attorney was granted, and that as a result no fiduciary duty was created. The court thus denied Brady and Cardwell's claims for breach of a fiduciary relationship. The court nevertheless concluded that Brown was Brady and Cardwell's attorney, apparently in the lesser sense (under Mexican law) that he rendered services to them.
 
 
 6
 We thus reject Brown's argument that the court found him to be Brady and Cardwell's fiduciary. The court merely found that Brown did have an attorney-client relationship with Brady and Cardwell, which while it did not create a fiduciary duty under Mexican law, was sufficient to justify Brady and Cardwell's reliance on his advice. As the court pointed out, no fiduciary duty is required to subject Brown to a constructive trust and to find unjust enrichment as to the other defendants. See Martin v. Kehl, 193 Cal.Rptr. 312, 317 (Cal.Ct.App.1983) (constructive trust is an appropriate remedy even in the absence of a fiduciary relationship or fraud).
 
 II. Statute of limitations for fraud
 
 7
 The district court applied California's statute of limitations to the fraud claims. Brown argues that the court should have applied the Mexican statute. This court reviews the district court's choice of law de novo. Waggoner v. Snow, Becker, Kroll, Klaris & Krauss, 991 F.2d 1501, 1505 (9th Cir.1993).
 
 
 8
 California courts analyze choice of law questions in three steps: first, a determination of whether the laws of the two states differ; second, a consideration of whether each state has an interest in having its law applied; and third, if a true conflict between the laws and the states' interests exist, a selection of the law of the state whose interests would be more seriously impaired were the other law applied. North Am. Asbestos Corp. v. Superior Court, 225 Cal.Rptr. 877, 879 (Cal.Ct.App.1986); Hurtado v. Superior Court, 522 P.2d 666, 669-71 (Cal.1974).
 
 
 9
 First, the statutes of California and Mexico clearly differ. Under California Code of Civil Procedure Sec. 338(d), a plaintiff may bring a fraud claim within three years of the discovery of the facts constituting fraud. In contrast, Article 1161(v) of the Civil Code of Mexico applies a two-year statute of limitations to claims of fraud, and the limitations period begins to run at the time the alleged fraudulent acts are performed. Under the Mexican statute of limitations, Brady and Cardwell's cause of action would have been barred altogether.
 
 
 10
 Second, California has an interest in applying its statute of limitations to protect its citizens by allowing them to recover for fraud, which in many cases will not be apparent until long after the performance of the fraudulent acts. Brown, who is not a Mexican citizen, does not identify Mexico's countervailing interest in the application of its statute of limitations. See Hurtado, 522 P.2d at 670 (litigant must demonstrate that the law of a foreign state will further the foreign state's interest and should therefore be applied). Presumably, Mexico's interest is in encouraging plaintiffs to bring actions quickly, to protect its citizens (here, all the defendants except Brown) from stale claims. See North Am. Asbestos, 225 Cal.Rptr. at 880 (shorter statute of limitations serves states' interest in protecting defendants from protracted litigation).
 
 
 11
 Finally, in evaluating which state's interest would be more severely impaired by the application of the other's statute, we find that California's interest in allowing its citizens time to discover their injury and thus recover damages for fraud outweighs Mexico's interest in efficiency and prompt resolution of disputes. This is particularly true where, as here, all of the plaintiffs' claims would be barred if the Mexican statute were applied. See Hurtado, 522 P.2d at 671-72 (generally, a state's interest in applying its law depends on the particular circumstances of the case).
 
 
 12
 We find that the district court did not err in applying the California statute of limitations.
 
 III. Withdrawal of demand for jury trial
 
 13
 Brown argues that he did not consent to have his case tried by the judge, and so should have had a jury trial.
 
 
 14
 Although this court reviews de novo whether a litigant in federal court is entitled to a jury trial, SEC v. Rind, 991 F.2d 1486, 1493 (9th Cir.), cert. denied, 114 S.Ct. 439 (1993), here we must determine a separate issue: whether, on the facts in the record, Brown consented to the withdrawal of the demand for trial by jury. Whether his actions and words constituted consent requires the court to apply the Federal Rules of Civil Procedure to established facts. Because this mixed question implicates the constitutional right to a jury, we apply de novo review. See United States v. City of Spokane, 918 F.2d 84, 86 (9th Cir.1990), cert. denied, 501 U.S. 1250 (1991) (de novo review when mixed question implicates constitutional rights).
 
 
 15
 Federal Rule of Civil Procedure 38(b) provides that "[a]ny party may demand a trial by jury of any issue triable of right by a jury...." Rule 38(d) further states "A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties." Such consent may be found if "the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury." Fed.R.Civ.P. 39(a)(1).
 
 
 16
 Brown was silent when the attorney for his wife Maria Brown withdrew the jury trial demand, in open court and on the record, at the status conference. Although failure to object at the time alone might not be sufficient to constitute an "oral stipulation" for purposes of Rule 39(a), his subsequent words nine months later in a motion filed with the court establish that he did indeed consent to withdrawal of the jury trial demand by his earlier silence. By stating that he may have made a "serious mistake in judgment" by agreeing to a bench trial, Brown confirmed that, by his silence, he did indicate his consent to the oral stipulation in open court.[2]
 
 
 17
 We find that Brown consented to the withdrawal of the demand for jury trial.
 
 IV. Motions to amend the judgment
 
 18
 Brown and Brown's family complain of the district court's denial of their motions to amend the findings. This court reviews the decision regarding a motion to amend the judgment under Federal Rule of Civil Procedure 52(b) for an abuse of discretion. Floyd v. Laws, 929 F.2d 1390, 1400 (9th Cir.1991).
 
 
 19
 On April 2, 1993, after the entry of judgment on March 26, 1993, Brown's family filed a lengthy motion under Federal Rule of Civil Procedure 52(b) to amend the district court's findings and requesting additional findings. Brown filed a similarly lengthy motion on April 5, 1993. Each motion was timely.
 
 
 20
 The district court denied both motions as res judicata on April 29, 1993, finding that the Brown family's motion was identical, and Brown's motion was nearly identical, to motions filed in February 1993 and denied in the March 26, 1993 final order. The court also denied those few of Brown's claims which were not stated in his earlier motion.
 
 
 21
 Brown first claims that the district court was bound to amend its findings to avoid the appearance of bias. This claim is frivolous.
 
 
 22
 Brown also challenges the district court's refusal to amend the findings to provide a more specific listing of the misrepresentations that were the basis of the court's finding of fraud.
 
 
 23
 The district court is required to "state findings sufficient to indicate the factual basis for its ultimate conclusion." Unt v. Aerospace Corp., 765 F.2d 1440, 1444 (9th Cir.1985). The findings must be sufficiently explicit to give the court of appeals a clear understanding of the trial court's basis for its decision, and must indicate the ground on which the decision was reached. Id. Even when the findings are mere conclusions, no remand is necessary if the basis for the court's decision is clear on the record. Id.
 
 
 24
 The district court's findings state that Brown never advised Brady and Cardwell that they could benefit from a trust, and in fact told them they could not benefit from such an arrangement. The findings also state that Brown told Brady and Cardwell that the contracts Brown drafted would give them the benefits of ownership of the hotel and the Boca property without violating Mexican law; instead, Brown intended to use, and did use, the contracts to divest Brady and Cardwell of their rights in the hotel and the Boca property, and to transfer the rights to Brown's family.
 
 
 25
 These findings of fact are explicit enough to give this court a clear understanding of the district court's basis for its finding of fraud. See Unt, 765 F.2d at 1444. The district court did not abuse its discretion in refusing to amend the findings.
 
 V. Interests acquired in Mexican judgments
 
 26
 Brown and Brown's family argue that the district court erred in awarding all of their interests in the Boca property to Brady and Cardwell, apparently because some of the same interests were awarded to the Browns in Mexican judgments awarding legal fees to Brown and rent to Maria Brown.
 
 
 27
 Related criminal and civil proceedings were pending in Mexico during the time of this lawsuit. Brady and Cardwell, pursuant to a November 1986 settlement agreement, agreed to use their best efforts to stop the ongoing Mexican criminal proceeding against the Browns in connection with the Hotel corporation and the Boca property. Brady and Cardwell also agreed to dismiss with prejudice all other matters, and the parties agreed to release all other claims brought in the United States or Mexico. Brady and Cardwell complied with the agreement and dismissed with prejudice their civil actions in Mexico. These actions included an action to nullify a shareholder's meeting of the Hotel corporation in which Maria Brown approved $109,539 in attorney fees for Brown. After Brady and Cardwell dismissed the action, Brown attached the Hotel property.
 
 
 28
 When Brady and Cardwell dismissed their appeal to block rent payments to Maria Brown, she did not dismiss her 1985 Mexican suit to collect rent and obtained a judgment in her favor. Maria Brown claims that the Mexican court found her to be the legitimate owner of the buildings, and the lease a valid contract.
 
 
 29
 When Brown failed to comply with the settlement agreement, it fell through and the action in the district court went forward. Because their Mexican lawsuits were dismissed with prejudice, Brady and Cardwell could not renew them.
 
 
 30
 On appeal, Brown and his family claim it constitutes unreasonable interference with the Mexican justice system for a federal court judgment to award the interests they obtained in a Mexican court. This argument is closest to a claim that the Mexican judgments should have been given collateral estoppel effect by the district court, which should not have awarded relief inconsistent with the Mexican judgments.
 
 
 31
 The Browns provide no documentation of the Mexican actions or judgments, nor do they indicate where such documents might exist in the district court record. It is therefore impossible for this court to determine whether the issues in the Mexican actions were identical, what issues were actually litigated, and whether any of the identical issues were a critical and necessary part of the judgment. See Clark v. Bear Stearns & Co., 966 F.2d 1318, 1320 (9th Cir.1992) (listing requirements for application of collateral estoppel). It was the Browns' duty to show clearly what the prior judgment decided. Because they have not met "their burden of showing with clarity and certainty what issues were determined," we will not consider their argument. Id. at 1321-22.
 
 VI. Unjust enrichment
 
 32
 The district court found that only Brown was liable for fraud, because Brown's family did not have the required intent or knowledge. The judgment did require Brown's family to relinquish all interests in the Hotel and the property, however, through a constructive trust to prevent unjust enrichment under California law. All the defendants were ordered to give a power of attorney over all their interests in the Hotel and the Boca property to an agent, who would place the property in a trust approved by the Mexican government for the benefit of Brady and Cardwell.
 
 
 33
 For a number of reasons, Brown's family challenges the imposition of a constructive trust on the family's interests in the Hotel and the property.
 
 
 34
 A. Failure to plead unjust enrichment or include it in the pretrial order
 
 
 35
 Brown's family first argues that the district court could not award a constructive trust to prevent unjust enrichment, because unjust enrichment was not pled in the complaint and thus is "an entirely new cause of action and theory not addressed in the [pretrial conference] order or at the trial."
 
 
 36
 In California, however, " 'Unjust Enrichment' does not describe a theory of recovery, but an effect: the result of a failure to make restitution under circumstances where it is equitable to do so." Lauriedale Assocs., Ltd. v. Wilson, 9 Cal.Rptr.2d 774, 780 (Cal.Ct.App.1992). "[N]o particular form of pleading [is] necessary to invoke the doctrine...." Frank v. Tavares, 298 P.2d 887, 891 (Cal.Ct.App.1956). A finding of unjust enrichment is necessary for the imposition of a constructive trust, Calistoga Civic Club v. City of Calistoga, 191 Cal.Rptr. 571, 576 (Cal.Ct.App.1983), and Brady and Cardwell's complaint did contain a claim for relief for constructive trust. We find no error in the district court's consideration of unjust enrichment in the fashioning of the remedy. See International Nikoh Corp. v. H.K. Porter Corp., 358 F.2d 284, 290 (7th Cir.1966) (where trial "court decided that [defendant's] conduct fell short of fraud but equitably, because of its conduct, it would be unjust for [defendant] to enrich itself," no error in granting relief for unjust enrichment where unjust enrichment was not pled).
 
 B. Application of California law
 
 37
 Brown's family also argues that the district court should have applied Mexican law to the "new cause of action of unjust enrichment," claiming that the district court's decision to apply California law to the fraud claims did not govern which law should have been applied to find unjust enrichment.
 
 
 38
 Brown's family cites Mexican Civil Code Article 1882, which limits the remedy for unjust enrichment to indemnity for damage caused. The family also argues that the two-year Mexican statute of limitations that applies in fraud actions also applies in unjust enrichment, giving no reason except general principles of comity.
 
 
 39
 For the reasons set forth above in section II, discussing the court's choice of law on the fraud statute of limitations, we find that the California law of unjust enrichment and the statute of limitations were properly applied to the acts that are the basis of the court's finding of unjust enrichment (which are in large part the same acts as those alleged to constitute fraud).
 
 
 40
 C. Failure to find all elements of unjust enrichment
 
 
 41
 Brown's family asserts that the district court erred in failing to make specific findings on each of the elements of unjust enrichment, citing Black's Law Dictionary 6th ed. (1990) for the required elements. The district court, however, cited the California law of unjust enrichment and properly found that all the elements were present. In its conclusions of law, the court stated that Brady and Cardwell's property was wrongfully obtained and held by the defendants, who were not bona fide purchasers and were thus unjustly enriched. These conclusions of law were sufficient to sustain the court's judgment of unjust enrichment. See Calistoga Civic Club, 191 Cal.Rptr. at 575-76, 575 n. 3 (listing elements of unjust enrichment and constructive trust, and noting that findings of fact and conclusions of law not specifically mentioning the doctrines were sufficient).
 
 D. Unclean hands
 
 42
 Brown's family claims Brady and Cardwell could not recover for unjust enrichment because they had "unclean hands" from their illegal acquisition of the Boca property.
 
 
 43
 The equitable doctrine of unclean hands does not bar recovery when any wrongful act is committed by the plaintiff, but rather only when the wrongful act " 'prejudicially affect[s] the rights of the person against whom the relief is sought so that it would be inequitable to grant such relief.' " Martin v. Kehl, 193 Cal.Rptr. 312, 319 n. 1 (Cal.Ct.App.1983) (quoting Wiley v. Wiley, 139 P.2d 950, 951 (Cal.Ct.App.1943)). In Wong v. Tenneco, 702 P.2d 570, 574 (Cal.1985), the California Supreme Court affirmed on the basis of comity the trial court's finding that Wong was barred from any relief because his illegal actions in obtaining Mexican land constituted unclean hands.
 
 
 44
 The district court did not find that the contracts were illegal, and found that Brady and Cardwell did not intend to violate Mexican law. Therefore Brown's family failed to establish that Brady and Cardwell acted wrongfully. Further, none of the defendants' rights is affected by the relief in a way that makes the judgment unfair; the district court found that they were not bona fide purchasers of the land. We find that the unclean hands doctrine does not apply to bar Brady and Cardwell from relief.
 
 
 45
 VII. Did the district court clearly err in finding that Lorna and Maria Brown did not purchase their interests for value?
 
 
 46
 Brown's family challenges several of the district court's conclusions of law in the February 3, 1992 Findings of Fact and Conclusions of Law. Conclusion of Law 4 states:
 
 
 47
 The members of the Brown family now claiming interests in the Hotel Las Arenas and the Boca property, including Maria Brown, Eric Brown, and Lorna Brown, are not bona fide purchasers of such property. Defendants' suggestion that their ownership of the Boca property and the Hotel Las Arenas resulted from bona fide business transactions with plaintiffs is absolutely without merit.
 
 
 48
 Conclusion of Law 10 states simply "This is clearly a case where plaintiffs' money has wrongfully been used to the defendants' benefit." Brown's family asserts that the district court erred in part in those findings, because Maria and Lorna Brown did purchase the property for value.
 
 
 49
 While this claim is styled as a challenge to the district court's legal conclusions, the citations to isolated parts of the record on Maria and Lorna Brown's behalf show that their real challenge is to the findings of fact underlying the legal conclusions. The district court described Brown's orchestration of Maria Brown's purchase of her interests in the property, noting that she invested little if any cash money. The court also found in Finding of Fact 45 that Lorna Brown, represented by Brown, acquired her interest in the property from one of the Mexican owners in 1975.
 
 
 50
 The district court summarizes its factual findings in Finding of Fact 71:
 
 
 51
 There is no evidence that the Brown defendants paid anything which approximates the value of the interests they claim. The purchase deeds for the property show that only the sum of $19,200 was paid for the entire Boca property. Of this sum, the documents reflect that $6,740 related to the property purchased by Eric Brown and Lorna Brown and the thirty-two (32) hectares that were placed in trust. The documents prepared by Chester Brown also reflect that the 500 hectares, later transferred to Rancho Costa de Oro, were purchased for approximately $2,830. Plaintiffs have directly invested in excess of $1,000,000 in the purchase and development of the Boca property and the improvements situated thereon.
 
 
 52
 The district court's factual findings are reviewed for clear error. In re San Vicente Medical Partners Ltd., 962 F.2d 1402, 1405 (9th Cir.), cert. denied, 113 S.Ct. 210 (1992). This standard of review gives significant deference to the trial court, requiring a " 'definite and firm conviction that a mistake has been committed.' " Concrete Pipe & Prods. v. Construction Laborers Pension Trust, 113 S.Ct. 2264, 2279 (1993) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).
 
 A. Maria Brown
 
 53
 Maria Brown cites evidence that she paid 20,000 pesos ($1,600) for the option to buy a portion of the property, and 4,480 pesos for the 32 hectares placed in trust (no dollar equivalent is given). She also claims that she agreed to contribute the rents over ten years to pay for her 51% participation in Cueva del Leon, that Brady and Cardwell contributed no money to her purchase of the shares in the Hotel corporation, and that she signed a promissory note for the funds to construct the hotel. The latter note was due in 1990.
 
 
 54
 We find that Maria Brown has not demonstrated that the trial court's factual findings were clearly erroneous. Even on her version of the facts as cited above, Maria Brown contributed only approximately 25,000 pesos, and makes no effort to establish that it was her own money or that it was anywhere close to the value of the property. Nor does she document that she paid the rents or paid on the promissory note, which significantly was "without recourse." There is no basis for a firm conviction that the district court made an error.
 
 B. Lorna Brown
 
 55
 Finding of Fact 45 describes Lorna Brown's purchase of Boca property in 1975. Neither she nor the Mexican seller were present; Brown, acting under her power of attorney, negotiated with the attorney representing the seller. Lorna Brown claims that 176,533.46 pesos (approximately $14,000) changed hands for 569 hectares, pursuant to an appraisal on the deed. The money was Brown's, "loaned" to Lorna.
 
 
 56
 Again, this evidence hardly demonstrates clear error in the district court's finding that Lorna Brown did not pay value for the property. Without more cited support in the record, we cannot say that there is a basis for a definite conviction that a mistake has been made. Aside from the recitation in the deed, there is no evidence of any sum that was paid, such as a cancelled check, as Chester Brown testified that he gave cash to the seller's agent on behalf of Lorna. The district court was entitled to discredit Brown's testimony. It is Lorna Brown's duty to point to where in the record there is evidence to show that the district court clearly erred, and she has not done so. We find no clear error in the district court's Finding of Fact 71.
 
 
 57
 VIII. Did the district court err in granting summary judgment on Maria Brown's counterclaim?
 
 
 58
 The district court granted Brady and Cardwell's motion for summary judgment on Maria Brown's counterclaim on September 10, 1992. Maria Brown assigns the following errors.
 
 A. Local Rule 7.14.1
 
 59
 Maria Brown claims that Brady and Cardwell violated the Central District's Local Rule 7.14.1, when they failed to file an amended Statement of Uncontroverted Facts and Conclusions of Law after the district court amended its findings. She claims that the district court should have denied the motion for summary judgment as a result.
 
 
 60
 Local Rule 7.14.1 requires that each motion for summary judgment be accompanied by a proposed "Statement of Uncontroverted Facts and Conclusions of Law." C.D.Cal.R. 7.14.1.
 
 
 61
 Brady and Cardwell filed such a statement on October 30, 1990, based on the district court's Findings of Fact and Conclusions of Law dated September 17, 1990. These findings were subsequently amended. Brady and Cardwell then filed a supplemental memorandum of points and authorities, which adopted and reconciled the revised findings.
 
 
 62
 We find that there was substantial compliance with Local Rule 7.14.1. Brady and Cardwell filed a statement and reconciled the amended findings. That reconciliation must be presumed sufficient, as Maria Brown does not identify in any way how the amended findings differ, and how any differences are significant.
 
 B. Use of February 3, 1992 Findings
 
 63
 Maria Brown claims the court erred in basing its dismissal on the February 3, 1992 Findings of Fact and Conclusions of Law issued in Brady and Cardwell's action. We construe this as an argument that the findings could not have preclusive effect on the issues before the court at summary judgment. Maria Brown offers no persuasive reasons for not allowing preclusion where, as here, the issues were identical, were actually litigated in the companion bench trial, and were necessary parts of the judgment. See Clark, 966 F.2d at 1320 (requirements for collateral estoppel).
 
 
 64
 She points out that the findings were not yet final when they were applied to the summary judgment motion on September 10, 1992, because final judgment had not yet been entered. (The court eventually entered a final ruling on March 26, 1993. The court, however, had bifurcated the trial with her consent, and no final judgment would issue until both phases were complete. Finally, the pretrial conference order contemplated that the bench trial in Brady and Cardwell's action would decide issues that would be conclusive on her counterclaim.
 
 
 65
 We find no error.
 
 C. Unclean hands
 
 66
 The district court found that Brady and Cardwell's defense of unclean hands was an equitable bar to the counterclaim. Maria Brown challenges this because the defense was not raised in Brady and Cardwell's answer to her counterclaim. This argument fails. "In the absence of a showing of prejudice"--and none has been shown here--"an affirmative defense may be raised for the first time at summary judgment." Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir.1993).
 
 D. RICO claims
 
 67
 Maria Brown argues that the district court erred in granting summary judgment on her claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Sec. 1962(b) and (d). She contends that the allegations of her counterclaim raised an issue of fact as to the existence of a RICO enterprise.
 
 
 68
 Maria Brown's response cannot rely on her pleadings alone to set forth facts to show that there are issues for trial. Fed.R.Civ.P. 56(e). This claim fails.
 
 IX. Failure to reopen discovery
 
 69
 Maria Brown claims that the district court erred in refusing to reopen discovery to take her deposition before it granted the summary judgment motion. This court reviews the district court's refusal to permit further discovery for an abuse of discretion. Harris v. Duty Free Shoppers Ltd. Partnership, 940 F.2d 1272, 1276 (9th Cir.1991).
 
 
 70
 Brown stopped Maria Brown's deposition in 1986 when her blood pressure rose during questioning. On September 30, 1986, the court issued an order barring her from testifying at trial because she could not be deposed. In Maria Brown's opposition to Brady and Cardwell's summary judgment motion on November 15, 1990, she acknowledged that she would not testify at trial.
 
 
 71
 On January 2, 1992, before the motion for summary judgment was argued, Maria Brown submitted a motion to reopen discovery so that her deposition could be used at trial. With the motion, she submitted a declaration stating that her health had improved and she now could be deposed. She submitted no declaration in connection with the summary judgment motion.
 
 
 72
 The summary judgment motion was argued on February 18, 1992. The court ordered the motion submitted, and ordered Maria Brown to file a declaration regarding her proposed testimony at trial. On February 28, in response to the court's order, Maria Brown filed a lengthy declaration regarding what she would testify to at trial if deposed.
 
 
 73
 When the court granted summary judgment and dismissed Maria Brown's counterclaims on September 10, 1992, it noted that it had specifically ruled that it would not consider the declaration in connection with the summary judgment motion. The court also found that even if it were to consider the declaration, the declaration failed to raise a genuine issue of material fact.
 
 
 74
 The district court did not abuse its discretion in refusing to reopen discovery. First, although the court had ruled that it would not consider the declaration, it did review it and found it would not affect the decision to grant summary judgment. Second, the declaration was not submitted in connection with the summary judgment motion, and was not even filed until after the motion had been argued. Under those circumstances, it was within the court's discretion not to consider the tardy declaration and not to reopen discovery.
 
 CONCLUSION
 
 75
 For the reasons stated above and in the opinion filed simultaneously in this case, we AFFIRM the district court.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Brown also appeals the district court's jurisdiction and argues that comity considerations require that we apply Mexican law and reverse the district court's judgment. We address those issues separately in an opinion for publication filed simultaneously with this memorandum disposition
 
 
 [2]
 Brown also argues that he cannot be bound by Maria Brown's attorney's waiver, because as a pro se litigant he cannot delegate his representation to anyone else. Maria Brown's attorney was not representing Brown. He was merely reporting the results of the out-of-court meeting on behalf of Brady and Cardwell's attorneys as well as Brown
 Brown also uses his status as a pro se litigant to argue that he did not understand that he was consenting to a bench trial. As an attorney, Brown cannot claim that he can be presumed to be ignorant of procedural requirements, and all indications are that he consciously consented to the withdrawal of the demand for a jury trial. See Lovelace v. Dall, 820 F.2d 223, 228 (7th Cir.1987) (court will not presume pro se litigant understands procedural aspects of waiver of jury trial; but where litigant appears to waive right consciously, and injustice to opposing party would result from reversal, no remand for jury trial). He appears to have represented himself capably, and simply changed his mind.